FLORA GIBBONS *vs.* RHODE ISLAND COMPANY.

JULY 10, 1914.

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Evidence.   Experts.*

An expert witness who has given his testimony upon some matter connected with the art or science of which he has special skill or knowledge, may be properly asked in cross-examination if he has always been of that opinion or if he has not at some specified time made a statement inconsistent with his present evidence, including a deposition given in an action between different parties.

*(2)   Evidence.   Experts.*

The scope of the cross-examination of an expert witness for the purpose of testing the value of his opinion is largely within the discretion of the court.

*(3)   Evidence.*

Where evidence is otherwise admissible it should not be excluded because the jury might fail to understand it or to comprehend the distinctions properly to be drawn.

*(4)   Evidence.   Negligence.*

In a personal injury case, where plaintiff claimed that an examination of her blood showed an excess of lymphocytes, evidence of the blood count of a witness offered by defendant was properly excluded, when not accompanied by evidence that the witness was in a normally healthy condition when the test was made.

(5)  *New Trial.  Exceptions.*

In a personal injury case, after verdict for plaintiff defendant's motion for new trial on the ground of excessive damages was granted unless plaintiff would file a remittitur in a certain sum.  Plaintiff filed a bill of exceptions to the decision and defendant filed its bill to certain rulings of the court upon the evidence and to the decision on the motion for new trial.  The court overruled all exceptions, and agreed with the amount of damages determined by the trial court.

*Held,* that under Gen. Laws, cap. 298, § 12, before the verdict should be set aside as excessive, plaintiff should be given an opportunity to remit the amount of excess as found by this court.

Trespass on the Case for negligence.  Heard on exceptions of both parties and overruled.

Sweetland, J.   This is an action of trespass on the case to recover damages for personal injuries alleged to have been received by the plaintiff through the negligence of the defendant.

The case was tried before a justice of the Superior Court sitting with a jury.  The jury returned a verdict for the plaintiff in the sum of twenty-seven thousand and five hundred dollars.  The defendant duly filed its motion for a new trial on the ground that the damages awarded by the jury were excessive.  Said justice in his decision on said motion held that the amount of said verdict was excessive and ordered that a new trial should be granted unless, within seven days, the plaintiff should remit all of said verdict in excess of twenty thousand dollars.  The plaintiff did not file her remittitur in accordance with said decision.  The case is before us upon the plaintiff's exception to the decision of said justice on the motion for a new trial and upon the defendant's exceptions to certain rulings of said justice, upon the admission of evidence, made during the trial and to the decision of said justice upon its motion for a new trial.

The defendant excepted to the ruling of said justice permitting the plaintiff in cross-examination of a medical witness, who had qualified as an expert, to call the attention of said witness to certain testimony given by him in another

case between different parties, which former testimony the plaintiff claimed was contradictory of the witness' testimony given in the case at bar. In direct examination this witness testified in regard to the condition of the plaintiff: "I think she—I am very positively of the opinion that she has one thing and that is this so-called traumatic neurosis which has been testified to, that includes elements of hysteria." Later in cross-examination the witness testified as follows: "Q. 44. "What do I understand you is the cause of this condition that you find, Doctor?" A. "I understand that the accident was the exciting cause; that the condition has been prolonged largely by litigation." Q. 45. "And the condition is what?" A. "What is known as traumatic— some call it traumatic neurosis, some call it litigation neurosis at this stage, because after three years the effects of the original accident have presumably passed away and that of the litigation is the important one; long continued study of herself and so on. It is a mental condition largely." And later in cross-examination the witness testified as follows: Q. 52. "How long have you been diagnosing neurosis and neurasthenia following an accident, trauma?" A. "Oh, I suppose for—ever since the diagnosis originated. Ever since it originated. They used to call these cases spinal concussion long ago. When I was in the medical school they called them all spinal concussion. Then about the time I graduated the opinion was changing about them, that they were—that the spinal cord was not affected in these cases and it was a functional condition and they began to call them traumatic neurosis and traumatic hysteria. That was along perhaps 1886 or something like that, and I have studied these cases ever since that time as well as before." Q. 53. "Traumatic neurasthenia and traumatic neurosis are in the same class?" A. "Well, in a way. Traumatic neurosis includes traumatic neurasthenia. Neurosis is a general term that includes hypochondria, hysteria and neurasthenia." "Q. 54. "Does traumatic neurosis mean a larger field of injury and symptoms than traumatic

neurasthenia?" A. "Not necessarily. It may be smaller."
Q. 55. "Now, ever since you began in 1886, as I under-
stand, to examine these cases you have made that diagnosis;
that people have traumatic neurosis or neurasthenia from
accident, trauma, injury. I want to know the length of
time you have been doing it?" A. "Well I should like
to include also what I have done besides the length of time.
I have examined and given opinions on these cases since
certainly that time, say 1886. When I have made the
diagnosis I have made it as I did here in this case, so-called
traumatic neurosis. I carefully used the word 'so-called,'
in view of the fact that it is not all due to the accident."

(1)     The plaintiff was then permitted to ask the witness,
against the defendant's objection if, in a deposition given
by the witness in another case, he had not made certain
general statements with regard to the diagnosis of neuras-
thenia resulting from accident, to which the witness replied
that he had. The answers of the witness, contained in said
deposition, in which these statements appeared were the
following: "Well, to tell the honest truth, the diagnosis of
neurasthenia resulting from accident is one that I practically
never make. I practically never made it. I don't regard
accidents as a cause of neurasthenia;" and: Answer—"I
mean I don't think that accidents cause neurasthenia as
such. Neurasthenia may be set up by worry, anxiety,
overwork, and I have sometimes made the diagnosis litiga-
tion neurasthenia in cases in which I thought that the
worry and anxiety of litigation was putting the person into a
more or less neurasthenic condition, but I don't think that
an accident in itself is a legitimate cause of neurasthenia."

The grounds of the defendant's objection to this cross-
examination is that it was testimony given in another case
between different parties; that the answers contained in
the deposition are not inconsistent with the testimony
of the witness given upon the stand in this case; and that the
examination must have created the impression upon the
minds of a jury of laymen that there was such an incon-

sistency, although none existed.    We do not find merit in
the exception.    It is proper cross-examination of an expert
witness, who, in his testimony, has given an opinion upon
some matter connected with the art or science of which he
has special skill or knowledge, to ask such witness if he has
always been of that opinion or if he has not at some certain
time, which is specified, made a statement which is incon-
sistent with his present testimony.    The scope of the cross-
examination of an expert witness for the purpose of testing
the value of his opinion is largely within the discretion of the
(2) judge presiding at a jury trial.    It is a proper exercise of
such discretion to permit such a witness to be asked if on a
former occasion he has not expressed a different opinion.
The cross-examiner may call the witness' attention to such
former statement of opinion, whether the same was made
orally, in some written work or, as in this instance, in a
deposition.    Later in his testimony, the witness in this case
insisted that his statements on the stand were in harmony
with those in the former deposition; and the defendant urges
that an examination of the whole of the witness' testimony
shows that to be the fact.    Sufficient however appeared
in the testimony of the witness and in his former deposi-
tion to furnish a basis for the plaintiff's claims that they
were contradictory.    Whether or not they were inconsistent
was a matter for the jury to determine in passing upon the
(3) value of the witness' testimony.    If this evidence was
otherwise admissible it should not have been excluded, as the
defendant now urges, because the jury might fail to under-
stand it, or to comprehend the distinctions properly to be
drawn.    It must always be that some members of a jury are
liable to become confused in the consideration of testimony
relating to scientific and medical subjects, fail to under-
stand some of the language employed by expert witnesses,
or fail to draw just conclusions as to the effect of their
testimony.    But when a party offers such direct testimony,
he cannot properly object to cross-examination on the
grounds that it may still further confuse the jury and that

they may not place a correct interpretation upon the answers, which may be given.

(4)    The defendant at the trial excepted to the ruling of said justice excluding testimony offered by the defendant to show the result of certain so-called counts of the blood of defendant's counsel. It was a part of the claim of the plaintiff that, as a result of said injuries, she was suffering from hyperthyroidism; that an examination of her blood showed an abnormal condition indicating a lymphocytosis, or an excess of lymphocytes in the blood stream; and that lymphocytosis is a corroborative symptom in cases of hyperthyroidism. The defendant claimed that the count of lymphocytes in the blood of the plaintiff was not in excess of the number of such cells appearing in the blood count of a normally healthy person; and sought to show the count which had been made of the blood of defendant's counsel. Said justice excluded this on the ground that no evidence had been introduced tending to show that said counsel was in a normally healthy condition at the time of taking the sample of which the count had been made. We think the evidence was rightly excluded.

We shall consider together the plaintiff's and the defendant's exceptions to the decision of said justice upon the motion for a new trial. The only question before the justice on said motion was as to the propriety of the amount of the jury's award. The defendant did not deny its liability. It is plain that the plaintiff was very seriously injured. The accident occurred on August 12th, 1910. The plaintiff was then twenty-five years old and up to that time had been in excellent health. She was thrown violently to the ground from a wagon in which she was riding, by a collision, in which the defendant's electric street car struck against the rear of said wagon; she had been physically incapacitated up to the time of the trial in June, 1913. The testimony is conflicting as to the disease from which the plaintiff is suffering. Witnesses for the plaintiff diagnosed her ailment as traumatic hyperthyroid neurasthenia, those for the

defendant were of the opinion that she was suffering from traumatic neurosis.   The plaintiff's chances of improvement are much greater if the latter diagnosis is the true one. There was testimony from which the jury might reasonably find that, while the plaintiff's present condition will probably be somewhat relieved and, under proper treatment, some of her more distressing symptoms may disappear, she will never be completely restored to health.   After a consideration of the whole testimony and the written decision of said justice we agree with him that the case demands very substantial damages; but that in view of the probable improvement of the plaintiff's physical condition in the future and upon a reasonable computation of her probable pecuniary loss the evidence does not warrant the full amount of the jury's verdict.   What sum will justly amount to compensation it is very difficult to determine.   Said justice has made a thorough review of the testimony and has carefully computed the items of damage.   The amount of twenty thousand dollars fixed upon by him appears to us to be as nearly adequate compensation for the plaintiff's injuries as can be given in money damages in a court of law.   Upon this very difficult question we agree with said justice and find no error in his decision on the motion for a new trial.

(5)    The question now arises as to the order which shall be made in remitting the case to the Superior Court.   Both the plaintiff's and the defendant's exceptions are to be overruled. We have agreed with said justice that the verdict is excessive in amount and that his determination as to a proper amount is just.   The plaintiff comes here upon an exception to a decision granting a new trial unless she should remit a part of the verdict before a certain day.   That day has passed; she did not remit and we have overruled her exception to the decision.   Shall we send the case back for a new trial in accordance with the decision; or, as we have approved the amount of damages which was fixed by the court, shall we order judgment to be entered in the Superior Court for that amount; or, shall we give to the plaintiff another oppor-

tunity to remit the improper excess before the verdict is set aside by our order? Chapter 298, § 12, Gen. Laws, 1909, provides as follows: "A verdict shall not be set aside as excessive by the Supreme or Superior Court until the prevailing party has been given opportunity to remit so much thereof as the court adjudges excessive." The exceptions of the plaintiff and the defendant brought before us the question as to whether the verdict was excessive; we have said that it was, and that it should be set aside. In our opinion a proper construction of the statute, quoted above, requires that before the verdict shall be set aside by our order, we must determine the amount of illegal excess and give the plaintiff an opportunity to remit. If we had fixed upon an amount of such excess greater than that fixed by the Superior Court it plainly would have been our duty under the statute to do so. Merely because the amount of improper excess which we have found agrees with the determination of the Superior Court, the plaintiff is not to be deprived of that privilege, for the verdict in fact will be set aside by our order.

The exceptions of the plaintiff and the defendant are overruled. The case is remitted to the Superior Court for a new trial unless the plaintiff on or before July 20th, 1914, shall file in the Superior Court her remittitur of all of said verdict in excess of twenty thousand dollars. In case the plaintiff shall duly file such remittitur the Superior Court is directed to enter its judgment for the plaintiff for twenty thousand dollars.

*John W. Hogan, Philip S. Knauer,* for plaintiff.
*Joseph C. Sweeney, Eugene J. Phillips,* for defendant.