JOHN J. GILBANE *vs.* ELMER E. LENT, City Treasurer.

JULY 5, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

(1) *Contributory Negligence. Question for Jury.*

The question of contributory negligence is generally one for the jury unless it clearly appears that the only proper inference from the facts is that in the

circumstances of the case an ordinarily prudent man would not have acted as did the plaintiff.

*(2)   Direction of Verdict.*

A verdict should not be directed if on any reasonable view of the testimony the plaintiff can recover.

*(3)   Highways.   Negligence.   Notice of Defects.*

While a fence across a highway is notice to the public that beyond that point construction operations are being carried on, it cannot be said as a matter of law that the presence of such fence is notice that the highway outside of said fence is not in condition for its ordinary use.

*(4)   Highways.   Negligence.   Notice.   Question of Fact.*

In erecting abutments for a new bridge over a railroad during construction operations a highway was closed by a fence. In the middle of the street about twenty feet in front of the fence was placed a wooden horse about sixteen feet long, according to the longest estimate; attached to which was a sign reading, "Street closed. No passing." The roadway was about twenty-one feet wide. Plaintiff was injured by a defect in the sidewalk.

*Held,* that it was a question of fact for the jury whether the presence of the horse and sign in the roadway should have caused plaintiff as a reasonable man to apprehend danger on the sidewalk and would have called for the exercise of a degree of caution greater than that ordinarily required of a traveler upon the sidewalk of a city street.

*(5)   Highways.   Contributory Negligence.*

Whether or not a traveler could have seen a defect if he had looked for it is not conclusive in determining whether he is guilty of contributory negligence, unless the surrounding circumstances are such that no other inference can be drawn from his conduct, but there still remains the question of fact whether acting upon the assumption that the city had performed its statutory duty, a traveler who is injured by a defect in a sidewalk, which he fell into while his attention was momentarily diverted, was exercising the care of an ordinarily prudent man in the circumstances.

*(6)   Highways.   Changes by Legislative Commission.   Notice.*

The placing of a notice in a highway that it was closed to travel, did not work an extension of the jurisdiction of a commission engaged in railroad construction work, beyond the point which it had clearly marked off as the limit of its operations.

*(7)   Highways.   Negligence.   Defects.   Changes by Legislative Commission.*

When changes are being made in a public highway by some body independent of the city and acting under direct legislative authority providing for abolition of grade crossings, the city is not relieved from its statutory liability for injury to a traveler caused by a defect in the street if the city has not actually closed the street to public travel.

*(8)   Direction of Verdict.   Preponderance of Evidence.*

A justice of the Superior Court has no authority to direct a verdict in accordance with what appears to him to be the preponderance of the evidence.

VINCENT J., dissents.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of plaintiff and sustained.

SWEETLAND, J.   This is an action of trespass on the case brought against the defendant as City Treasurer of Central Falls to recover damages for injuries alleged to have been received by the plaintiff by reason of the unsafe condition of a portion of the sidewalk on Cross street, a public highway in said city.

The case was tried before a justice of the Superior Court sitting with a jury.   At the conclusion of the evidence said justice directed the jury to return a verdict for the defendant on the ground that it appeared from the evidence that the plaintiff was guilty of contributory negligence.   The case is before us upon the plaintiff's exception to this ruling of said justice, and upon his exceptions to certain rulings made by said justice with reference to the admission of testimony.

It appeared that at the time of the alleged accident to the plaintiff the Pawtucket and Central Falls Grade Crossing Commission, acting under the authority of Chapter 896 of the Public Laws of 1912, had removed the bridge upon which said Cross street had formerly been carried over the railroad location operated by the New York, New Haven and Hartford Railroad Company, and were engaged in erecting the abutments for a new bridge at that point.   To the east of the railroad location and outside of the land which had been condemned for railroad purposes said commission had built a tight board fence across the northerly sidewalk and the roadway of Cross street and had placed a picket fence across the southerly sidewalk on said street.   In this manner persons using Cross street were entirely excluded from the place where said abutments were being constructed.   At the time of the alleged accident the plaintiff lived on the northerly side of Cross street, a short distance east of the point where said fences had been placed.   There was evidence presented at the trial from which it might be found that on Sunday, August 9, 1914, at about half past seven o'clock in

the evening, two of the plaintiff's children, a little girl about two and one-half years old and a boy about seven years old, were playing near the curb on the southerly side of Cross street; that the plaintiff having a baby about ten months old in his arms came from his home on the northerly side of the street and crossed to where the children were playing for the purpose of having them come home because it was becoming dark; that as he approached them the little girl ran upon the southerly sidewalk and the plaintiff for the purpose of reaching her and getting her between himself and his home went upon the southerly sidewalk and while there stepped into a hole of the existence of which he was ignorant; this caused the plaintiff to fall and as a result of said fall he suffered the injury to recover damages for which this suit has been brought. The plaintiff testified that said hole was irregular in shape, extended from the curb across a portion of the sidewalk, was about three feet wide at its widest point and about two and one-half feet deep in the deepest part, and was shallowest at the curb; that there were no lights and no guard about said hole.

The ruling of said justice in directing a verdict is in accordance with the claim of the defendant that it should be said as a matter of law that the plaintiff was guilty of contributory negligence. The question of contributory negligence is generally one for the jury unless it clearly appears that the only proper inference from the facts is that in the circumstances of the case an ordinarily prudent man would not have acted as did the plaintiff. This court has frequently held that a verdict should not be directed if on any reasonable view of the testimony the plaintiff can recover. *Baynes* v. *Billings*, 30 R. I. 53; *Reddington* v. *Getchell*, 40 R. I. 463. It is the generally accepted rule that a person is required to be on his guard against such perils only as a reasonable man would apprehend in like circumstances. The fence across the highway was notice to the public that beyond that point the construction operations of the Grade Crossing Commission were being carried on; but it cannot

be said as a matter of law that the presence of the fence was notice to the public that the highway to the east of the fence (3) was not in condition for its ordinary use. It also appeared that in the middle of the roadway of Cross street about twenty or thirty feet in front of the fence was placed a wooden horse, estimated by different witnesses as from eight to sixteen feet long and about three and one-half feet high. To this horse was attached a sign reading, "Street Closed. No Passing. C. W. Blakeslee & Son." C. W. Blakeslee & Son were the contractors who were engaged in constructing the abutments of the new bridge. The roadway of Cross street was about twenty-one feet wide. It thus appears that said horse did not extend entirely across said roadway, whichever estimate of its length be accepted as true. The (4) defendant contends that from the presence of this horse and sign it is conclusively shown that the plaintiff was given warning that he should be on the lookout for a possible defective condition, which might render the sidewalk unsafe for use. Just what interpretation an ordinarily prudent man would give to said notice is clearly a question of fact and not of law. The New York, New Haven and Hartford Railroad Company had charge of the reconstruction work under the commission. From the testimony of the civil engineer, the bridge foreman and the construction inspector of said railroad company, the conclusion is warranted that said horse and sign were placed by them in the roadway of Cross street in connection with the removal of the temporary bridge and the erection of said fence, and were so placed for the purpose of notifying the public that the railroad could not be crossed at that point. It does not appear from their testimony that said horse and sign were intended to have any reference to the condition of Cross street to the east of the fence. It may be said that the sign on the horse would be a superfluous notice that Cross street no longer crossed the railroad; for the fence itself constituted a physical bar to such crossing and hence the above conclusion is not a reasonable view to take of the purpose of the sign. Without the

testimony of these agents of the railroad company that would be a pertinent suggestion; what we have said above, however, appears to us to be the reasonable conclusion to draw from their testimony. But whatever may have been the intention in the minds of the agents of the railroad company, who placed the horse and sign in Cross street, in our opinion a notice such as the one in question placed upon a barrier in the roadway of a city street may well be understood by a traveler upon the sidewalk, which is not barred, as referring merely to that portion of the roadway which lies beyond the barrier; and when in such circumstances the traveler proceeds along the unobstructed sidewalk the question of his due care is not concluded against him as a matter of law. This view is well supported by the authorities. In *Hurley* v. *Boston*, 202 Mass. 68, the court said: "In the case of such a street a barrier erected across the part used for carriages but not across the sidewalk or part ordinarily used by pedestrians, may be interpreted by the traveller as being intended to stop the progress of carriages, but not of pedestrians upon the sidewalk; and many times that interpretation will be correct. And even if there be a notice that the street be closed to travel while grading, the question is not absolutely concluded against the traveller. In many cases he may be justified in thinking that the notice is no broader in its scope than the barrier, and that the thing closed to public travel is only that part of the street which is shut off by the barrier." To the same effect is *Stoliker* v. *Boston*, 204 Mass. 522, and *Leonard* v. *Boston*, 183 Mass. 68. In the view which we have taken of the meaning and the effect of said horse and sign, it was for the jury to say as a matter of fact whether their presence in the roadway should have caused the plaintiff as a reasonable man to apprehend danger on the sidewalk, and would call for the exercise of a degree of caution greater than that ordinarily required of a traveler upon the sidewalk of a city street.

In support of his position the defendant places great reliance upon certain testimony given by the plaintiff at the trial. In cross-examination he testified as follows: "975 Q. Then why couldn't you see the hole? A. Well, I didn't see the hole. 976 Q. The reason is you didn't look, isn't that the reason? A. I didn't look for it, no; I didn't look for the hole. 977 Q. If you had looked you would have seen it? A. If I had looked I would have seen it." And in answer to questions by his attorney the plaintiff testified: "982 Q. Now, as I understand you to say, you didn't know this hole was there or didn't expect to find the hole? A. No, sir. 983 Q. If you went looking for the hole it was big enough to be found? A. Yes, Yes." The meaning of the plaintiff is plain: he was ignorant of the existence of the hole; the hole was large enough to be seen if he had looked for it or had looked at it. We must assume that the plaintiff did not see the hole for he stepped into it thereby causing serious injury to himself and offering the possibility of very severe injury to the child which he was carrying in his arms. In our opinion it is immaterial whether or not the plaintiff stated that he could have seen the hole if he had looked for it; as it is perfectly apparent, that, in the state of the light on the street at that time, a person of ordinary eyesight could not have failed to see a hole of the size of the one in question if he had looked for it. The same is true in most cases where a plaintiff is seeking to recover damages for injuries received by reason of a defect in a highway, when said defect is not concealed by the darkness or otherwise. If the contention of the defendant is adopted, recovery could rarely be had in such cases. There are few defects in the surface of a highway which in the daytime or even in the twilight cannot be seen by one who looks at them, or looks for them, or having reason to apprehend their existence is particularly on his guard against injury from them. However, whether or not a traveler could have seen such defect, if he had looked for it, is not conclusive in determining whether he is guilty of negligence contributing to his own injury, unless the sur-

rounding circumstances are such that no other inference can be drawn from his conduct. In this case in our opinion, notwithstanding the admission of the plaintiff, there still remained the question of fact for the determination of the jury, whether, acting upon the assumption that the city of Central Falls had performed its statutory duty, with his attention momentarily diverted, the plaintiff was exercising the care of an ordinarily prudent man in the circumstances. In support of his contention the defendant cites *Nicholas* v. *Peck*, 20 R. I. 533. The decision there is not applicable to the facts in the case at bar. In *Nicholas* v. *Peck* it appeared that the plaintiff was injured by falling over stones projecting above the surface of the highway. The plaintiff had previous knowledge of the defect and when she had occasion to pass that way had been in the habit of going around said stones. The court held that the plaintiff was bound to look for said stones if they were dangerous and she knew of the danger. The defendant also cites cases from other jurisdictions where the facts were somewhat similar to those that appeared in *Nicholas* v. *Peck*. These cases are based upon the principle that when a traveler has previous knowledge of a defect in a highway a greater degree of caution is required of him; and he must be on his guard to avoid injury from a known danger. It may be noted that in some jurisdictions it has been held by the courts of last resort that in case of injury to a plaintiff through a defect in a highway the fact of previous knowledge of such defect on the plaintiff's part is not in all circumstances conclusive upon the question of his contributory negligence. The ordinary rule is that when a person is traveling on the sidewalk of a public street and is ignorant of a defect in its surface he has a right to assume that the way is safe and is not required to exercise the highest degree of care and keep his eyes constantly on the walk. The care required of him is that of an ordinarily prudent man and the question of his contributory negligence is for the jury. In *Wood* v. *Boston*, 121 Mass. 337, the plaintiff alleged that while walking along the sidewalk of one of

the public streets of the city of Boston she stepped into a hole and was injured. The plaintiff in that case in answer to the question whether she knew of any reason why she did not see that place into which she stepped testified as follows: "I don't know any reason why, except I didn't expect it was there. I wasn't looking at the sidewalk. I suppose I was looking at the ferry. It is most natural if I was looking at it I would most likely see it." She also testified, "If I had been looking on the sidewalk for the hole I would have stepped past it. I don't think, if I saw it I should have gone into it. I can't say why I was not looking at the sidewalk. I know I wasn't looking for an accident or expecting it until it came onto me." The court said: "The surrounding circumstances and the conduct of the plaintiff at the time she stepped into the hole in the sidewalk were fully disclosed by the evidence. It cannot be said to appear conclusively that she was careless, because she failed to keep her eyes constantly upon the sidewalk before her. Whether she was in the exercise of that due care which persons of common prudence would exercise under like circumstances was properly submitted to the jury." In *Chicago* v. *Babcock*, 143 Ill. 358, the court said: "A person passing along a sidewalk in a city is required to use ordinary and reasonable care and diligence to avoid danger, but what is such ordinary and reasonable care depends upon the circumstances of each particular case, and is a question of fact for the jury. A pedestrian upon such sidewalk may ordinarily assume that the sidewalk is in a reasonably safe condition for travel. To hold that such person is absolutely bound to keep his or her eyes constantly fixed on the sidewalk in a search for possible holes or other defects, would be to establish a manifestly unreasonable and wholly impracticable rule." In *Cantwell* v. *City of Appleton*, 71 Wis. 463, it appeared that the plaintiff walked into an excavation on the sidewalk in broad daylight, that she was walking slowly looking straight ahead and did not see that the sidewalk had been disturbed. The court said: "Moreover,

she was passing along the principal thoroughfare of the city, and had no reasonable cause to fear or suspect that such an unguarded pitfall would be allowed in her path. Many facts were proved bearing upon the question of the alleged contributory negligence of the plaintiff, from which different inferences may reasonably be drawn. In such a case the authorities all agree that the question of negligence is for the jury." See also *Flynn* v. *Watertown,* 173 Mass. 108. We are of the opinion that a verdict should not have been directed for the defendant on the ground that the plaintiff was guilty of contributory negligence.

The defendant contends before us that a verdict should have been directed in his favor because the city of Central Falls had no jurisdiction over the place where the plaintiff claimed that the accident occurred and owed no duty to the plaintiff. He bases this contention on the fact that the Pawtucket and Central Falls Grade Crossing Commission had been empowered by the General Assembly to condemn land, and to make changes in and about public bridges and highways in the cities of Pawtucket and Central Falls in order to carry out the purpose of its creation. In regard to any portion of Cross street, which said commission had taken under its jurisdiction in accordance with the power conferred upon it, the claim might well be made that the city of Central Falls had been relieved of its statutory obligation to repair and keep safe for travel. As to the rest of Cross street the duty of the city remained unchanged. For the purpose of operating a steam shovel and for convenience in erecting the abutments of the new bridge, either by authority of the statute or by permission of the city of Central Falls, said commission had taken temporary control of a part of Cross street beyond the place where the abutments of the new bridge would stand when completed and beyond the line of its condemnation. Well outside of and to the east of its operations the commission had erected said fence across the highway. Said fence must be held to mark the limit of the control assumed by the commission for the purpose of carry-

ing on its work.   Mr. Curtis, the civil engineer of the New York, New Haven and Hartford Railroad Company, called by the defendant, testified that "in all street work we have to take as much as is necessary to build a new bridge," and further that "the city gave us authority to go in there and restore our masonry abutments and whatever was necessary in accordance with the plans."   From this testimony of the defendant it appears that the fence was erected and a portion of Cross street to the east of its line of condemnation was (6) occupied by the commission in accordance with a special permission obtained from the city of Central Falls.   When the former bridge on Cross street was removed a similar fence was erected which was taken down when the temporary bridge was completed and travel across the railroad location was resumed.   When the progress of the construction work required that the use of the temporary bridge should be discontinued the fence which existed at the time of the accident in question was erected.   The grade of Cross street to the east of the fence remained undisturbed throughout these operations.   It is plain from these circumstances that at all times the control of Cross street to the east of the fence had remained in the city of Central Falls.   The placing of the horse and sign in front of the fence does not affect this question.   By whomever they were placed there they cannot properly be regarded as working an extension of the jurisdiction of the Grade Crossing Commission beyond the point which it had clearly marked off as the limit of its operations.   If the city permitted the horse and sign to remain in one of its highways it may avail itself of any advantage to be gained from the notice and warning which their presence gave, in accordance with the principles which we have set out above.   Further consideration of this claim (7) of the defendant is unnecessary.   The proposition, however, is well supported by authority that, when changes are being made in a public street of a city by some body independent of the city and acting under direct legislative authority providing for the abolition of grade crossings or for some

other public work, such city is not relieved from its statutory liability for injury to a traveler caused by a defect in the street if the city has not actually closed said street to public travel.   *Connelly* v. *Boston*, 206 Mass. 4; *Stewart* v. *Boston*, 223 Mass. 525; *Torphy* v. *Fall River*, 188 Mass. 310.

The defendent further claims that the direction of a verdict by said justice should not be disturbed by us because it was supported by the weight of the evidence that there was no hole in the sidewalk in question, and if the plaintiff fell into a hole it was into one on private land adjoining said street.   An examination of the transcript of evidence discloses that there was testimony presented at the trial that the plaintiff was injured by falling into a hole on the sidewalk.   We have frequently said that it is not within the province of a justice of the Superior Court to direct a verdict in accordance with what appears to him to be the preponderance of the evidence.   Under the provisions of our statute relating to appellate proceedings the authority of this court to order judgment against the party in whose favor a verdict or decision has been rendered is limited to cases in which we find that there is no legal evidence to support such verdict or decision.   The power of a justice of the Superior Court in that regard does not exceed the power of this court.

The action of the Superior Court in directing a verdict for the defendant was not warranted.   The plaintiff's exception thereto is sustained.   We find no merit in the other exceptions of the plaintiff; and they are overruled.   The case is remitted to the Superior Court for a new trial.

VINCENT, J., dissents.

*John P. Beagan,* for plaintiff.

*Mumford, Huddy & Emerson, George H. Huddy, Jr.,* for defendant.