ETHEL M. ANDREWS *vs.* PENNA CHARCOAL CO.

NORMAN H. ANDREWS *vs.* SAME.

JULY 10, 1935.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CAPOTOSTO, J. These are actions for negligence brought by a husband and wife for injuries claimed to have been received by Mrs. Andrews in a collision between an automobile driven by her and a truck belonging to the defendants, William J. Erba and Zaveris Erba, doing business as the Penna Charcoal Co.

The cases were tried together before a justice of the superior court sitting with a jury and resulted in verdicts of $1,120 for Mrs. Andrews and $500 for Mr. Andrews. The defendants moved for a new trial in each case upon the usual grounds and, further, that the damages in each case were excessive. At the conclusion of the hearing on these motions, the justice granted the defendants' motion in the case of Mrs. Andrews unless she remitted all of the verdict in excess of $600, and denied the motion in the case of Mr. Andrews. Mrs. Andrews filed a remittitur in her case and the defendants brought a bill of exceptions in each case to this court.

The two cases are before us on defendants' exceptions to certain rulings during the trial, to the refusal to direct verdicts for the defendants and to the court's decision on defendants' motion for a new trial in each case.

The accident happened between 11 and 11:30 in the forenoon of November 13, 1931, at or near the center of a triangular or pear-shaped and unobstructed area where

Apponaug Road runs, with a delta-like opening, into Elmwood avenue, or the Post Road, so-called, in a suburban section of the city of Warwick. Elmwood avenue is a four-lane highway, which runs due south up to the base of this opening and from there on begins to turn with a sweeping curve to the right and proceed in a southwesterly direction towards the village of Norwood. Apponaug Road is a two-lane highway that runs from the east into but does not cross Elmwood avenue. Its opening onto that highway, together with the four lanes thereof, forms the widest portion of the area in question. At the time of the accident the road and weather conditions were good.

Mrs. Andrews testified that she drove her Graham-Paige sedan, with a three year old boy sitting beside her, westerly along Apponaug Road, intending to proceed south on Elmwood avenue to go to her mother-in-law's house in Norwood, where her daugher was staying while attending school in that village; that when she reached the junction of Apponaug Road and Elmwood avenue, she stopped to permit free passage to an automobile that was proceeding northerly on Elmwood avenue on the first lane of traffic which she would have to cross in order for her to drive southerly on that highway to her destination; that after this automobile had passed, she looked to her left and saw the defendants' truck some 350 to 400 feet away coming northerly on this same first lane towards the junction; that there was no other traffic on Elmwood avenue in the immediate vicinity; that she started to cross Elmwood avenue and that, as she was entering the second lane for north-bound traffic, she saw the truck, which at that time was some fifty feet from her to her left, turn from its first lane into the lane that she was then actually crossing; that she tried to turn to her right in an attempt to avoid a collision, but that she was unable to do so before the truck struck the middle of the left side of her car. She further testified that after she parked the car, the driver of the truck came over at her request and told her in the conversation

that followed that "it was his fault," that she "had the right of way there."

The defendants' operator testified that he was driving his four-ton coal truck in the first north-bound lane on Elmwood avenue at a moderate rate of speed; that as he approached the curve he slowed down to 15 or 20 miles an hour and saw through the mirror a car in his rear that seemed to be gaining in order to pass him; that as he put out his hand to notify this car that he intended to turn from the first to the second lane for north-bound travel, he saw Mrs. Andrews' automobile in motion on Apponaug Road and close to its junction with Elmwood avenue; that he could not estimate how far Mrs. Andrews was from him at the time he turned into the second lane, but that as he continued to make the left curve of Elmwood avenue at the reduced speed of some five miles an hour, he saw Mrs. Andrews drive her automobile onto the first north-bound lane of Elmwood avenue at 25 miles an hour and bear to her right as if she intended to proceed in the same direction in which he was going; that he then increased his speed to about 10 miles and both vehicles, the automobile in the first lane and the truck in the second lane, moved northerly on Elmwood avenue for some distance until the time when Mrs. Andrews suddenly changed her course and drove the automobile across the second lane; that the truck was then about 30 feet from Mrs. Andrews; that he immediately put on both brakes but was unable to avoid a slight collision with the left side of Mrs. Andrews' car; that, in spite of the impact, she continued across Elmwood avenue and that after she had stopped her car, headed south in the first lane for south-bound traffic, he went over to her and asked for her driver's license and registration, that she stated that "she didn't have them with her, and not to call the police." The driver denied that he made any statement to Mrs. Andrews admitting any fault on his part.

The helper, who was seated beside the driver of the truck, testified substantially to the same effect. Other witnesses

were produced by each side with reference to numerous details, but their testimony is on collateral matters and need not be specifically referred to for our purpose.

With these conflicting claims before it, the court was asked to direct a verdict for the defendants on the theory that, since Mrs. Andrews had clearly indicated an intention to drive in a northerly direction, the driver of the truck, who was proceeding in a proper manner across the junction, was justified in relying upon her action and was not to be held liable for her sudden change of mind and direction of her automobile at a time when his truck was so close as to make a collision unavoidable. This contention rests on the assumption that the testimony of the driver is the only credible evidence in the case and that whatever Mrs. Andrews said should be either disregarded or so strongly construed against her, in view of what the driver stated, as to destroy its credibility with reference to those parts of her testimony which support her claim and squarely contradict the testimony of the driver. On a motion to direct a verdict for a defendant all reasonable inferences in favor of the plaintiff must be drawn from the evidence. *Jacobs* v. *United Elec. Rys. Co.*, 46 R. I. 230; *Cunningham* v. *Walsh*, 53 R. I. 23; and this court has repeatedly held that a verdict should not be directed for a defendant if, on any reasonable view of the evidence, the plaintiff is entitled to recover. *Gilbane* v. *Lent*, 41 R. I. 462; *Souza* v. *United Elec. Rys. Co.*, 49 R. I. 430; *Cunningham* v. *Walsh, supra.* The trial court was clearly right in refusing to direct a verdict for the defendants in each of these cases.

The defendants in their brief cite a number of decisions by this court and quote isolated language therefrom in regard to actionable negligence, proximate cause, plaintiff's due care and directed verdicts. We agree with the statements quoted, but find the cases inapplicable to the facts in the cases before us. A summary reference to a few of the cases will show the marked difference between the facts in the instant cases and those in the authorities that are cited

for our assistance. In *Jacobs* v. *O'Dette*, 42 R. I. 447, the court sustained a nonsuit where the driver of an automobile approached an intersection of two highly traveled streets in the business section of the city of Providence without looking to the right or to the left, and who did not see the other automobile until after he heard the crash. In *Labbee* v. *Frenze*, 53 R. I. 168, the plaintiff, who was coming from a side street to enter a highly traveled city highway, failed to look when he might have had a clear view of approaching traffic before entering the intersection, and failed to see the defendant's car until he had reached the first car track on the main highway. The case of *Sarcione* v. *The Outlet Co.*, 53 R. I. 76, concerns a fifteen year old plaintiff who, while crossing a city street on foot, stopped with her companion in front of a parked car to allow a truck of the defendant company to pass. She claimed to have been injured · by some projection on the side of the truck. The plaintiff had no recollection of what occurred from the time when she reached the street until she regained consciousness in a hospital, and her companion did not see the truck strike the plaintiff nor observe whether the plaintiff had previously taken any precaution for her own safety. In *Gilbane* v. *Lent, supra*, the plaintiff stepped in a hole on or near a street where a railroad bridge was under construction; in *Wojtyna* v. *Bazar Bros. & Co.*, 47 R. I. 221, the plaintiff sued for injuries resulting from falling into an unguarded elevator well; and in *Wilmarth* v. *Cray*, 50 R. I. 496, the question at issue was the rights of a pedestrian who remains standing on the edge of the sidewalk of a narrow and congested street in the very heart of the city of Providence in the face of reasonably obvious danger from the overhang of passing vehicles. We have referred to these cases to which our attention was directed, to show that although they state well known principles of established law, they are not pertinent in their facts to the matter in issue.

The defendants urge that the trial justice, in stating his reasons for his denial of their motions for a new trial, erred

in his application of some of the rules of the road, so-called, to the facts shown by the evidence. No exception was taken to the court's charge to the jury and, under our practice, the charge as given stands as the law of the case. The ingenious argument that counsel for the defendants present to us as to how, under the rules of the road, a person shall make a left-hand turn "from a four-lane highway or *on* a four-lane highway," although interesting, is neither applicable nor convincing. No left turn from one highway to another is involved here, and the only movement by the truck that can be construed as a left turn was when the driver proceeded from the first lane onto the second lane for north-bound traffic on Elmwood avenue. At that time he was being overtaken by a car in his rear that he evidently sought to check or at least to confine in the first or outside lane. What is relevant in this case is the operation of the truck by the defendants' driver with reference to traffic in front of him and to his right as he approached and entered the junction of Elmwood avenue and Apponaug Road, rather than the propriety of his conduct in respect to an automobile in his rear that in no way figured in the accident. The trial court properly refused to adopt the defendants' theory in this respect.

The rules of the road are the result of experience, and prudence, if nothing more, dictates that they be observed at all times. Compliance with one rule does not excuse the violation of others, if their observance is called for at any given time or place; and any such violation may be considered with all the facts in evidence in passing upon the questions of due care and of negligence. *Sears* v. *Bernardo & Sons*, 44 R. I. 106; *McWright* v. *Providence Telephone Co.*, 47 R. I. 196. In the absence of notice to the contrary, the driver of a motor vehicle has a right to assume that these rules for the common safety will be obeyed. *Oates* v. *Union R. R. Co.*, 27 R. I. 499; *Leonard* v. *Bartle*, 48 R. I. 101. To try to define any definite course of conduct, by which the responsibility for collisions at street intersections

or junctions can be determined, is to attempt the impossible. The rights of the parties in such cases are subject to so great a variety of dissimilar topographic characteristics, to such varying conditions due to climatic and other causes, and to such constantly changing situations, often suddenly created, as to make each case depend for its solution upon a determination of the particular facts in the light of accepted principles of law.

The question before us is whether a new trial should have been granted or denied. If the decision of the trial court in denying the defendants' motion for a new trial is justified by the evidence, it is not material to our consideration that it reached its conclusion through faulty reasoning. *Russo* v. *The Rhode Island Co.*, 38 R. I. 323. Our examination of the record in this case, discloses no error on the part of the trial justice in denying the defendants' motion for a new trial. He clearly finds that the verdict of the jury on the issue of liability is supported by a fair preponderance of the credible evidence in the case. Many decisions by this court, starting with *Wilcox* v. *The Rhode Island Co.*, 29 R. I. 292, hold that in such a case the decision of the trial court should be given great weight. We have carefully reviewed the testimony and find no reason to depart from this well established rule. We see no reason to disagree with the ruling of the trial justice on the question of liability.

The question of the amount of damages is important, as well as that of liability, and the trial court is in duty bound to give it serious consideration, keeping in mind that the burden is upon the plaintiff to prove the damages by a preponderance of the evidence. A plaintiff should be compensated for all his damages of which the defendants' negligence was the proximate cause, but no claim for damages should be allowed to stand where such claim is not supported by the required degree of proof, or is speculative, or imaginary, or is clearly attributable to other causes.

The testimony shows that the force of the collision was slight and that the resulting damage to the automobile was negligible. Mrs. Andrews was not confined to her home nor was she incapacitated from driving her automobile shortly after the accident. X rays show no recent injury but do reveal distinct indications of a preexisting arthritis. The only injury claimed by Mrs. Andrews herself is pain in the region of the chest and left shoulder. It is quite evident from the record, and it was practically conceded in argument before us, that Mrs. Andrews is a person of super-sensitive characteristics. She had been under treatment for some time previous to this accident for different ailments, including a nervous condition. The testimony in these cases does not establish by the required degree of proof that all the medical charges and other incidental expenses testified to, amounting to $372.05, were incurred for any injury proximately caused by this accident, or for any aggravation, so caused, of an existing ailment. The evidence on this point, considered as a whole, indicates quite clearly that a substantial part of this sum was expended for conditions traceable to other causes.

The trial justice, in passing on the question of damages in the case of Mrs. Andrews, says: "It is difficult to determine how much of her suffering and the nervous condition attendant upon the accident is due to the injury received in the accident itself, or due to a condition which existed previously. She has a record of considerable previous treatment." He then refers to her ailments and operations before the accident and reduces that verdict to $600. In the case of Mr. Andrews, the trial court, after referring to the total expenditures of $372.05, says: "Perhaps part of this amount was expended because of the existence of a previous condition of nervousness on the part of his wife and that it was not all spent to take care of the exaggerated condition which resulted from the injury. However, he is entitled to some amount for loss of his wife's services, and the sum awarded to him is so slightly in excess

of the actual expenditures or obligations for medicines, medical attendance and necessary household help, that the court feels that the sum awarded in the husband's case is not excessive but is sufficient to fairly compensate him for his damage and loss."

A scrutiny of the evidence on the question of damages in each of these two cases, convinces us that the well founded doubt expressed by the trial justice in passing upon this question was resolved by him with too great liberality in favor of each plaintiff. The amounts as fixed or permitted to stand by the trial court are excessive.

After serious consideration, we find that the sums of $400 for Mrs. Andrews, and $150 for Mr. Andrews are full compensation to them for the damages proximately resulting to them respectively from the accident.

All other exceptions have been considered and found to be without merit.

The defendants' fifth exception in each case is sustained on the ground of excessive damages and the cases are remitted to the superior court for new trials unless the plaintiff Ethel M. Andrews shall, on or before July 25, 1935, file in the office of the clerk of the superior court a remittitur of all of the verdict in excess of $400, and the plaintiff Norman H. Andrews shall, on or before said July 25, 1935, file in the office of the clerk of the superior court a remittitur of all of the verdict in excess of $150.

Upon the filing of such remittitur, judgment shall be entered in each case upon the verdict as reduced by said remittitur.

*Fergus J. McOsker*, for plaintiffs.

*Comstock & Canning, Edward M. Brennan*, for defendants.