DECISION
This matter was heard de novo on appeal from the District Court. It was tried to the Court without a jury. Consequently, the following shall constitute the Court's findings of facts and conclusions of law.
 Findings of Fact
1) The Plaintiffs are married and jointly own property located at 33 Arlington Street in the City of Pawtucket.
2) The property was purchased by the Sandbloms in June 2004.
3) Sometime in March 2005, Mr. Sandblom contacted the Defendant Corporation, Timber Tree Services, Inc., ("Timber") to provide tree services to five trees located on the Arlington Street property. Mr. Sandblom advised Defendant that he and his wife wanted the removal of one tree, and the trimming of four trees — two in the backyard and two in the front yard one of which was a mature Silver Maple tree.
4) The Defendant provided Plaintiffs with a written estimate of the charges for the work to be performed. That written estimate was introduced as a full trial exhibit. The written estimate did not contain a breakdown of the cost for each of the five trees; rather, it stated that the total charge would be $1400. *Page 2 
5) The Defendant began the work in April 2005.
6) Mr. Sandblom was home on that day and observed initially that the project was proceeding as he expected. However, late in the day, one of Defendant's workers contacted Mr. Sandblom and asked if Mr. Sandblom wanted the Silver Maple tree cut down entirely. Mr. Sandblom said he was surprised at the condition of the Silver Maple.
7) Even before work commenced, total removal of the Silver Maple tree was an option offered by Defendant, through its owner, Mr. Carl S. Hamerle, Sr., due to the fact that the tree appeared to be damaged. The damage was evidenced by a basketball-sized cement plug appearing in the base of the tree, suggesting that there may have been rot in the tree. It was, in fact, rot that Defendant's worker discovered and reported to Mr. Sandblom on April 5, 2005. Mr. Sandblom acknowledged that the cement plug existed when Plaintiffs purchased the property in 2004.
8) The Sandbloms now claim that as a result of the negligent services of Defendant, the large Silver Maple tree in the front yard suffered permanent and irreversible damage, thereby proximately causing a reduction in the value of their property as a whole. Pursuant to G.L. 1956 § 34-20-1, they seek twice the value of the tree and three times the value of the wood. The Defendant has counterclaimed for the outstanding balance due for services rendered to Plaintiffs.
9) Although no photographs were introduced showing the tree's condition prior to the commencement of work in April 2005, Mr. Sandblom testified that before Timber's work, the Silver Maple was "overgrown" with vegetation and needed trimming, but was otherwise healthy. His testimony as to the health of the tree was not credible in light of the observations of rot made by Mr. Hamerle and one of his workers. Furthermore, the placement of a cement plug *Page 3 
commonly was considered to be a structural enhancement of a tree over forty years ago, suggesting that the rot may have been present for a considerable period of time.
10) The absence of a photo by Plaintiffs to corroborate Mr. Sandblom's statements about the previous condition of the tree, leads the Court to find credible the testimony of Mr. Hamerle that the Silver Maple may well have been damaged prior to April 2005. Despite Mr. Hamerle's suggestion that perhaps the tree was not worth further substantial investment, Mr. Sandblom instead chose to proceed with the request to trim or "top off" the maple. This decision in part was due to Mr. Hamerle's suggestion that after "topping off" the tree would be healthy and regain a healthy condition, similar to a fully grown Silver Maple observed in a neighbor's yard.
11) Mr. Sandblom's expectation before Defendant's work commenced was that that the Silver Maple would be "topped" to get tree growth away from electrical wires. Mr. Hamerle described the work to be performed as the removal of "sucker growth."
12) Instead, as evidenced by two exhibits introduced by Plaintiffs, Defendant trimmed so much growth from the Silver Maple that it only could be described immediately after the work as two bare trunks, totally denuded of any vegetation. Without having photographic evidence of the tree's condition prior to Defendant's work, the Court cannot with any degree of certainty, determine that the Defendant's work caused the condition of the tree as shown on Plaintiff's Exhibit 3A. Based on Mr. Hamerle's testimony as to the tree's condition before his company worked on it, as well as his testimony concerning the rot discovered on the day of the work, the Court finds that the Silver Maple was not a healthy tree when it was topped.
13) Mr. John P. Campanini, Jr., testified as an expert for Plaintiffs. Based upon his educational background, professional experience, and licensure (Mr. Campanini worked for the Providence Parks Division as City Forester for eleven years; as Chief Park's Planner for sixteen *Page 4 
years; and he was a member of several professional organizations), the Court finds Mr. Campanini's testimony as to the quality of Defendant's work on the Silver Maple to be credible and trustworthy. He testified that Defendant's work was contrary to industry standards in that Defendant removed more than twenty per cent of the live wood from the tree. He also testified that Defendant failed to adhere to industry standards by pruning or cutting known nodes of the tree, which he found by observing the "cuts" made to the tree by Defendant.
14) As to the work Defendant performed on other trees in Plaintiffs' yard, some of the work appeared improper in that Defendant failed to remove all of the dead wood on one of the trees. The work on that tree, according to Mr. Campanini appeared "unfinished." On a second tree in the back yard, Defendant did not complete the job of thinning out the crown of the tree, in that many branches on the lower canopy were not removed. This, Mr. Campanini described as "sub-par performance." Mr. Campanini supplied no testimony to quantify the damage caused by Defendant's work. For this reason, Mr. Campanini's causation testimony was weak because he was unable to quantify how much of the tree's current condition was caused by prior rot or prior improper pruning performed by someone other than Defendant.
15) To calculate damage to the Silver Maple, Mr. Campanini testified that he used a formula called the "trunk formula," whereby the calculation of loss starts with the circumference of the trunk near the ground, and continues based on certain objective and subjective factors relative to the tree's location and condition. According to Mr. Campanini, this mode of calculation is approved by the International Society of Arboriculture of which he is a member. The result of the calculation is to determine an "appraised" value of the tree before Defendant's work which he determined to be $5100. *Page 5 
However, for several reasons, some factual and some legal, the Court cannot accept that amount as the damage caused by Defendant. For instance, the formula fails to quantify the condition of rot in the tree as evidenced by a cement plug, and Mr. Hamerle's advice to Plaintiff that perhaps the tree should simply be removed. Also, based on the photographic evidence of the current condition of the tree, the Court cannot find the Silver Maple was "totally lost" as a result of Defendant's work. In fact, the photographic evidence of the tree's current condition is that the Silver Maple seems to have returned to a tree lush with foliage; indeed, even Mr. Campanini testified that the Silver Maple is not dead and does not need to be replaced.
16) Mr. Campanini also testified that damage to the Silver Maple could be cured by four or five subsequent remedial prunings to select branches that may develop good supporting unions and help regain the form and shape of a natural Silver Maple. The cost of such remediation was estimated to be $750.00 per remedial pruning which when multiplied by 4 or 5 comes to the cost of remediation of $3,000 to $3,750. The tree is quite mature, approximately 80 years old, and replacement would be almost impossible. Such a mature tree would not be available from a nursery for transplantation, leaving the only replacement alternative as a young sapling that would take many years to develop into the stature of the Silver Maple prior to Defendant's work.
17) In summation, the Court accepts as credible Mr. Campanini's testimony that Defendant was negligent in failing to properly trim the Silver Maple and other trees in the back yard. Despite Mr. Hamerle's testimony that he used proper industry standards when he pruned the tree, the Court finds Mr. Campanini's testimony more credible, precise and thorough on the issue of proper pruning techniques. His testimony, however, falls short of credible as to whether Defendant's work in April 2005 caused all of the damage to the Silver Maple. *Page 6 
18) Finally, the Court does not find credible Mr. Campanini's testimony as to the value of the damage. First of all, the tree was not a total loss, and appeared to the Court to be reasonably healthy. The only credible testimony Mr. Campanini offered on damage was his testimony on cost of repairs at $3,000 to $3,750.00 for remedial trimmings.
 Analysis and Conclusions of Law
The Plaintiffs assert that Defendant's negligence caused permanent and irreversible damage to the Silver Maple and that such negligence proximately caused a reduction in the value of their property. The Defendant denies being negligent and seeks payment for his services as contained in the estimate.
In order to establish a negligence claim against Defendant, Plaintiff must prove by a preponderance of the credible evidence that Defendant was negligent. See Santana v. RainbowCleaners, 969 A.2d 653, 658 (R.I. 2009) ("To properly set forth a claim for negligence, a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.") (Internal quotations omitted). Accordingly, Plaintiffs' must prove that Defendant's negligence caused loss or damage to Plaintiffs' property and demonstrate the value of those damages as determined by the reasonable value of the loss or damage. SeePerrotti v. Gonicberg, 877 A.2d 631, 636 (R.I. 2005) (quotingAndrews v. Penna Charcoal Co.,55 R.I. 215, 222, 179 A. 696, 700 (1935)) (observing that "the burden is upon the plaintiff to prove the damages by a preponderance of the evidence.")
However, while "[a] plaintiff should be compensated for all his damages of which the defendants' negligence was the proximate cause . . . no claim for damages should be allowed to stand where such claim is not supported by the required degree of proof, or is speculative, or *Page 7 
imaginary, or is clearly attributable to other causes."Id. Furthermore, "[a]lthough mathematical exactitude is not required, the damages must be based on reasonable and probable estimates." White v. LeClerc, 444 A.2d 847, 850 (R.I. 1982).
The Rhode Island Supreme Court has commented on various measures of damage regarding the loss or damage to a tree. In White v.LeClerc, the Court directed the trial justice "to consider replacement cost as the proper measure of determining damages[,]"468 A.2d 289, 291 (R.I. 1983) because "the parties had impliedly consented to replacement costs as the proper measure of damages."White v. LeClerc, 444 A.2d at 850. In Williams v.Hathaway, 21 R.I. 566, 45 A. 578 (1900), the Court believed an appropriate measure of damage would be the effect that the lost or damaged tree had on the value of the real estate to which it was attached. In Tortolano v. DiFilippo,115 R.I. 496, 503, 349 A.2d 48, 52 (1975), the Court stated that "the general rule is that where the damage [to realty] is temporary the cost of repair measure is proper and where the damage is permanent, the diminution in value measure is most appropriate."
Although the Court finds that Plaintiffs proved negligence by the credible testimony of Mr. Campanini, adduced at trial, their evidence on the issues of causation and damages is somewhat shaky. The evidence revealed that the Silver Maple was not healthy when it was pruned by Defendant. Consequently, the Court concludes that Plaintiffs failed to demonstrate by a preponderance of the evidence that the Defendant's negligence was the proximate cause of the damage, or that the Silver Maple was completely destroyed such that replacement would be the proper measure of damages. In fact, actual replacement cost would be very difficult to calculate due to the fact that a similar mature maple would not be available at a nursery for transplantation. *Page 8 
Considering that replacement value would not be appropriate in this case, the Court rejects Mr. Campanini's valuation testimony that used the circumference formula.[1] The Court is of the opinion that the best measure of damage in this case probably should be the diminution in the value of the real estate which was associated with this landscaping feature. However, no expert opinion was offered by a qualified expert that would allow the Court to measure damage by that method.
Consequently, the Court concludes that because the evidence demonstrates that the tree has made a considerable recovery since it was pruned, the damage it suffered was temporary and the cost of repair would be the appropriate measure of the damages. The only credible testimony concerning the cost remedial measures was proffered by Mr. Campanini. He credibly testified that the Silver Maple could be restored with four to five remedial prunings at a cost of $750 per pruning. The Court concludes, therefore, that Plaintiffs' should be awarded $3,750 in damages to cover the cost of five remedial prunings. However, the Court declines to award double damages pursuant to § 34-20-1 because Defendant had been given permission to come onto the property and trim the trees.
Section 34-20-1 provides:
 Every person who shall cut, destroy, or carry away any tree, timber, wood or underwood whatsoever, lying or growing on the land of any other person, without leave of the owner thereof, shall, for every such trespass, pay the party injured twice the value of any tree so cut, destroyed, or carried away; and for the wood or underwood, thrice the value thereof; to be recovered by civil action. (Emphasis added.) *Page 9 
In the instant matter, Defendant performed his services with Mr. Sandblom's permission; indeed, at his express invitation. While the services may not have been to Mr. Sandblom's satisfaction, the Court is of the opinion that the Legislature did not intend double damages for negligent services that were performed at Plaintiffs' request.
As to Defendant's counterclaim for unpaid charges, the Court starts with the estimate provided by Defendant for work on five trees on the Plaintiffs' property for $1400. It appears from the testimony that the work performed on three of the trees (the Silver Maple, and two trees in the back yard) was deficient. As there was no testimony that the work on the remaining two trees was deficient, Defendant should be entitled to payment for the work that was done on those two trees. However, there was no testimony as to the value of the work that was performed on those trees. The estimate demonstrates that different work was performed on different trees such that an award of two-fifths of the original estimate at best would be speculative and at worst would be abuse of discretion. As the Court refuses to go out on a limb on the issue of Defendant's damages, it hereby denies Defendant's counterclaim for failure to prove damages.
 Conclusion
For the reasons set forth in this decision, Judgment in the amount of $3,750 shall enter in favor of the Plaintiffs.
[1] Indeed, the Court is not fully persuaded that the circumference formula employed by Mr. Campanini would be acceptable under the standards set forth in Daubert v. Merrell DowPharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993), and as adopted by our Supreme Court in DiPetrillo v. Dow ChemicalCo., 729 A.2d 677 (R.I. 1999). The formula proffered by Mr. Campanini does not appear to the Court to result in a fair determination of the actual value of the damage done to this tree, or result in what the Court believes is a fair calculation of the value of the tree if deemed lost.