Loraine A. KELLEY

v.

COWESETT HILLS ASSOCIATES.

No. 99–419–Appeal.

Supreme Court of Rhode Island.

March 30, 2001.

Mark J. Faria, Raymond Alan Lafazia, Raymond A. Lafazia, Providence, for Plaintiff.

J. Ronald Fishbein, Providence, Edward J. Mulligan, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on January 24, 2001, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. Ms. Loraine A. Kelley (Kelley or plaintiff) has appealed a grant of summary judgment entered in favor of Cowesett Hills Associates (Cowesett Hills or defendant) by the Superior Court. The plaintiff asserted that the trial justice erred in granting defendant's motion for summary judgment by virtue of the existence of genuine issues of material fact in her claim arising from asbestos-laden tiles in her kitchen flooring. After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the issues raised on appeal at this time. We affirm.

### Facts and Travel

The plaintiff was a tenant in the Cowesett Hills Apartments (apartment) from May 1979 through December 10, 1993. The apartment is owned and managed by defendant. In May 1979, defendant contracted to have tile flooring installed over the existing flooring in the kitchen of plaintiff's apartment. Sometime in 1989, plaintiff noticed that the tiles were beginning to crack and lift in certain areas. In November 1989, the parties agreed to renew plaintiff's lease and the defendant promised to contract for repairs to the deteriorating kitchen floor.

In the spring of 1990, defendant sent a worker over to plaintiff's apartment to remove both layers of deteriorating tile and install a plywood subfloor in the kitchen. Initially, the worker informed plaintiff that he did not want to remove the tiles because they were "old." The plaintiff did not inquire further, and the worker did not elaborate on his reasoning. About a week later, presumably in response to a phone call from the worker, the Department of Environmental Management (DEM) sent inspectors to plaintiff's apartment to examine the floor and subfloor.[1] Kelley admitted that the DEM inspection raised her suspicion "to a slight extent" with regard to the presence of asbestos; however, she further stated that the inspection and her

---

1. The plaintiff alleges that the DEM inspectors did not tell her why they were there nor why they were inspecting the floor.

suspicion merely "created some questions in [her] mind." The plaintiff never pursued the issue nor inquired of DEM about findings it may have made. Soon thereafter, a different contractor was hired to install vinyl sheeting over the plywood subfloor. The plaintiff did not contact DEM concerning the inspection until December 1993, the period immediately before the time in which she vacated the apartment.

With the exception of some slight curling in the corners, the vinyl flooring stayed intact until plaintiff vacated the apartment. According to plaintiff, there were no other repairs made to the vinyl floor between the spring of 1990 and December 1993. Moreover, throughout the same period, Kelley never raised any concerns about asbestos to anyone.

In October 1993, Kelley averred that after viewing a television program depicting the dangers of asbestos her suspicions increased and she immediately contacted an engineer with whom she was friendly.[2] Kelley says that after she viewed the program and spoke with her friend she decided that she no longer wanted to live in the apartment, her residence for the previous fourteen years.

The plaintiff's lease expired on November 1, 1993; however, she held over and remained in the apartment. During October and November, Kelley personally collected approximately six samples of tile from the apartment and had them tested for asbestos.[3] The defendant filed a trespass and eviction action against Kelley in November in an attempt to regain possession of the apartment.[4] On December 10, 1993, Kelley finally returned her keys and physically vacated the apartment.

On August 25, 1995, plaintiff filed a three-count complaint against defendant alleging negligence, assault and battery, and deceptive trade practices. The defendant moved for summary judgment on all three counts. On June 17, 1997, the motion was heard and granted on the assault and battery count (count 1), but was denied as it related to negligence and denied without prejudice as it related to the deceptive trade practice count.[5] In ruling on the motion, the trial justice found that the statute of limitations had run on the assault and battery claim. However, he found that,

> "[a]s far as the negligence, * * * in a situation where the danger is not going to manifest itself for some period of time, you've got to leave this period of time open. * * * I'm just going to leave it open *for the time being. If you can present additional evidence.*" (Emphasis added.)

2. Kelley's increased concerns manifested themselves during the last month of her lease in October 1993, which also coincided with defendant's prosecution of a trespass and eviction action filed in November 1993.

3. According to the analysis conducted, the mastic used to adhere the tiles to the floor consisted of 10 to 15 percent asbestos fibers but did not contain any visible fibers. However, none of the samples collected by plaintiff came from the bathroom or kitchen floors that were replaced in 1990. In addition, it is unclear from the record whether the areas from which the samples were removed were cracked and lifting similar to the condition of the kitchen and bathroom floors in 1990.

4. The defendant had filed two previous trespass and eviction actions against Kelley. The first, filed in 1991, resulted from plaintiff's failure to pay rent because she could not access her money due to the banking crisis. The second action, filed in August 1993, resulted from plaintiff's failure to pay rent because of a broken bathroom pipe; this action was dismissed after plaintiff paid defendant the two months withheld rent.

5. Curiously, two orders were entered following the June 17, 1997 hearing. An order prepared by plaintiff entered on June 23, 1997 denied summary judgment on the negligence count and deceptive trade practice count, and granted summary judgment on the assault and battery count. A second order prepared by defendant entered on July 15, 1997 granted summary judgment on the deceptive trade practice count without prejudice. However, an order entered on September 26, 1997 clarified that the July 15, 1997 order would stand.

On March 11, 1998, defendant renewed its motion for summary judgment on the count alleging deceptive trade practices.[6] The renewed motion was heard and granted on September 15, 1998,[7] and judgment was entered to that effect on September 17, 1998.

On September 29, 1998, defendant filed a second motion for summary judgment on the negligence count. This motion was heard and granted on May 11, 1999. Relative to the issue of law-of-the-case, the trial justice stated,

"it seems to me that [the original justice] denied [count 1] in order to give the plaintiff an opportunity to produce additional evidence. The defendant * * * is now coming forward and saying the change of circumstances from the last time this motion [was] argued, is that plaintiff has not met the expectation of the prior justice * * *. And I'm persuaded by that argument."

Relying on *Plummer v. Abbott Laboratories,* 568 F.Supp. 920 (D.R.I.1983), the trial justice found that,

"[t]he [*Plummer*] Court essentially [said] that the possibility of contracting cancer because of an exposure to a carcinogenic, thereby giving someone an increased risk of contracting cancer, is essentially too tenuous to be a viable cause of action.

* * *

The [c]ourt would adopt the *Plummer* analysis in looking at defendant's motion for summary judgment, and it is the [c]ourt's opinion that the plaintiff in Count 1 has not stated a viable cause of action."

Final judgment entered on May 11, 1999, and plaintiff filed a timely notice of appeal. *See* Super.R.Civ.P. 54(b).[8] On appeal, Kelley raised two issues for determination. First, plaintiff contended that the motion justice erroneously reconsidered the original denial of summary judgment on the negligence and deceptive trade practices claims, thus violating the law-of-the-case doctrine. Second, plaintiff asserted that because her discovery and concerns about asbestos fell within the statute of limitations, her assault and battery claim was not time barred and should not have been dismissed.

### Standard of Review

"It is well settled that this Court reviews the granting of a summary judgment motion on a *de novo* basis." *M & B Realty, Inc. v. Duval,* 767 A.2d 60, 63 (R.I.2001) (citing *Marr Scaffolding Co. v. Fairground Forms, Inc.,* 682 A.2d 455, 457 (R.I.1996)). "In conducting such a review, we are bound by the same rules and standards as those employed by the trial justice." *M & B Realty Inc.,* 767 A.2d at 63 (citing *Rotelli v. Catanzaro,* 686 A.2d 91, 93 (R.I.1996)). "[A] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or

---

**6.** Both renewed motions were heard by a second trial justice.

**7.** A transcript of this hearing was not provided to the Court.

**8.** Rule 54(b) of the Superior Court Rules of Civil Procedure, *"Judgment Upon Multiple Claims or Involving Multiple Parties,"* provides in pertinent part:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a

final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

denials in the pleadings or on conclusions or legal opinions." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I.1996). "[A]ccordingly, we will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Woodland Manor III Associates v. Keeney,* 713 A.2d 806, 810 (R.I.1998) (quoting *Rotelli,* 686 A.2d at 93).

## Negligence

At the conclusion of the original motion hearing, the trial justice denied defendant's motion for summary judgment on the negligence count. We agree with the interpretation of the second trial justice that the original motion was denied in order for plaintiff to produce evidence of asbestos-related symptoms that had not yet manifested themselves to establish, if possible, a *prima facie* case of negligence.[9] On the eve of trial, at the time the second motion was heard, plaintiff had not developed any asbestos-related symptoms. Exposure to a carcinogenic agent does not automatically result in the development of cancer. If mere exposure to a potential carcinogenic was actionable, the courts would be inundated with actions arising merely from an individual's daily activities such as consuming a soft drink. *Cf. Clift v. Narragansett Television L.P.,* 688 A.2d 805, 813 (R.I.1996) (Rhode Island law requires evidence of physical symptomatology); *Marchetti v. Parsons,* 638 A.2d 1047, 1052 (R.I.1994) (recovery for negligent infliction of emotional distress requires a showing of accompanied physical symptomatology); *Reilly v. United States,* 547 A.2d 894, 895 (R.I.1988) (under Rhode Island law, plaintiff must suffer physical symptomatology to recover damages for negligent infliction of emotional distress).

Therefore, in accordance with the finding of the trial justice, we conclude that in the absence of any physical manifestation of asbestos-related illness or disease, plaintiff could not establish a *prima facie* case of negligence as a matter of law, and therefore, summary judgment was proper. Further, we hold that the possibility of contracting cancer resulting from mere exposure to a carcinogen, although potentially increasing one's risk of developing cancer, is too tenuous to be a viable cause of action.

In addition, we reject plaintiff's argument that, pursuant to the law-of-the-case doctrine, the trial justice should have refrained from deciding the renewed motion for summary judgment. It is well established that law-of-the-case principles will not bar reconsideration of a renewed motion when evidence has been introduced in the interim that significantly extends or expands the record. *See Salvadore v. Major Electric & Supply, Inc.,* 469 A.2d 353, 356 (R.I.1983) (citing *State v. Infantolino,* 116 R.I. 303, 311, 355 A.2d 722, 726 (1976)).

In the case before us, the original, June 1997, summary judgment motion was denied to give plaintiff more time to produce more probative evidence tending to establish a *prima facie* case of negligence. In its renewed motion, defendant alleged that two years later, the plaintiff had failed to produce any additional evidence tending to establish negligence. The trial justice properly considered this argument and found that the circumstances had significantly changed since the original motion in that plaintiff had not met the expectation of the prior justice. We agree. The trial justice recognized that plaintiff had been afforded additional time to establish a *prima facie* case for negligence and had failed to do so. The plaintiff's inability almost two years later and on the eve of trial to come forward with any additional evidence

---

9. Although plaintiff's action was presented in terms of negligence, we are of the opinion that plaintiff essentially alleged infliction of emotional distress, namely a cancer phobia, based on defendant's removal of the asbestos tiles in the kitchen and bathroom.

of negligence constituted a sufficient change in circumstances to defeat the law-of-the-case doctrine. Absent the manifestation of asbestos symptomatology, it had now become a certainty that plaintiff would be unable to establish a *prima facie* case for negligence. In light of the change in circumstances, we conclude that the trial justice did not violate the law-of-the-case doctrine and properly granted defendant's renewed motion for summary judgment.

### Assault and Battery

█ Pursuant to G.L.1956 § 9–1–14(b), an action for assault and battery must "be commenced and sued within three (3) years next after the cause of action shall accrue, *and not after.*" (Emphasis added.) The accrual date of the injury must be established to determine whether a plaintiff's claim was time barred under the statute.

Kelley filed her three-count, personal injury action in Superior Court on August 25, 1995, arising from her perceived exposure to asbestos in her apartment. Kelley said that she first became suspicious of asbestos "to a slight extent" when DEM inspectors, responding to a call from a worker, came to her apartment in the spring of 1990. Kelley did not attempt to definitively determine the purpose of the DEM inspection until December 1993, even though the 1990 inspection "created some questions in [her] mind" about the existence of asbestos. In light of Kelley's concerns stemming from the 1990 DEM inspection, we agree with the finding of the trial justice that plaintiff's assault and battery claim accrued during or shortly after the inspection. We are of the opinion that, at the very least, Kelley was placed on inquiry notice of the possible presence of asbestos, and thus, the statute of limitations began to run at that time.

Based on the foregoing, we conclude that Kelley's action began to accrue in the spring of 1990, following the DEM inspection. Thus, plaintiff successfully could have filed her suit no later than the spring of 1993, but did not file a claim until August 25, 1995, more than five years later and well after the three-year statutory limitation. Accordingly, we hold that the action was barred under the statute of limitations, and, therefore the trial justice properly granted defendant's motion for summary judgment relative to assault and battery.

### Deceptive Trade Practice

█ To support a claim under G.L. 1956 chapter 13.1 of title 6, the Unfair Trade Practice and Consumer Protection Act (Act), a plaintiff must establish that he or she is a consumer, and that defendant is committing or has committed an unfair or deceptive act while engaged in a business of trade or commerce. After reviewing the record, we are satisfied that plaintiff is not a consumer entitled to protection under the Act. Kelley leased an apartment from defendant. While living in the apartment, plaintiff contacted the defendant and requested that it repair or replace the deteriorating kitchen floor. Soon thereafter, defendant contracted to have the old tile removed and new tile installed. The role of the respective parties in this case cannot reasonably be construed to establish a consumer/vendor relationship necessary to invoke the Act. Save for the lease, the parties did not enter into any contractual relationship concerning the repair of the floor. Kelley did not contract with Cowesett Hills for the work and no consideration was exchanged. A tenant's request that his or her landlord make repairs to her apartment does not elevate the tenant to the status of a consumer entitled to a remedy under the Act. Rather, a tenant may have an action for breach of a lease covenant if the work was negligently performed. Pursuant to the facts of this case, we are satisfied that plaintiff was not a consumer, nor is she entitled to a remedy under the Act.

█ Further, in interpreting § 6–13.1–

4, entitled "Exemptions," [10] this Court has previously held that the Act expressly sets forth an exemption for all activities and businesses that are subject to monitoring by state and federal regulatory bodies or officers. *See Doyle v. Chihoski,* 443 A.2d 1243 (R.I.1982); *State v. Piedmont Funding Corp.,* 119 R.I. 695, 382 A.2d 819 (1978). The removal of asbestos is governed by G.L.1956 chapter 24.5 of title 23, Asbestos Abatement Act (Asbestos Act). Thus, pursuant to § 6–13.1–4, the Asbestos Act preempts the action filed by plaintiff in this case. The plaintiff is not therefore entitled to a remedy under § 6–13.1–2. Accordingly, we are of the opinion that the trial justice properly granted defendant's motion for summary judgment.

## Conclusion

Based on the foregoing, we are satisfied that no genuine issues of material fact existed for any of the plaintiff's three claims. The plaintiff could not establish a *prima facie* case of negligence nor was her claim for assault and battery timely. Lastly, the plaintiff was not a consumer as contemplated by the Deceptive Trade Practices Act, and, moreover, we hold that the Act is preempted by the Asbestos Act and was thus not a proper basis for relief.

Accordingly, the plaintiff's appeal is denied and dismissed, and the order appealed from is affirmed. The papers in this case are remanded to the Superior Court.

Chief Justice WILLIAMS did not participate.

10. General Laws 1956 § 6–13.1–4, "Exemptions," provides:

"Nothing in this chapter shall apply to actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States."