Marilyn GRIECO, in her capacity as mother and next friend for her minor son, John DOE, alias

v.

Stephen T. NAPOLITANO, in his capacity as Treasurer of the City of Providence.

No. 2000–299–Appeal.

Supreme Court of Rhode Island.

Jan. 17, 2003.

Richard W. Petrocelli, Providence, for Plaintiff.

Richard G. Riendeau, Providence, for Defendant.

Before WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court for oral argument on October 31, 2002, on appeal by the defendant, Stephen T. Napolitano, in his capacity as Treasurer of the City of Providence (city or defendant), from judgments granting summary judgment and damages in favor of Marilyn Grieco (Grieco or plaintiff), on behalf of her minor son, who is designated as John Doe (John).

On the afternoon of February 14, 1994, Grieco's fourteen-year-old son, "John," was traveling home after school with two friends. While walking on Felix Street in the Smith Hill section of Providence, the youths were approached by more than twenty young Asian males, seemingly gang-affiliated, who, using threats and intimidation, intended to rob John and his friends. While attempting to flee, John fell to the ground, and was beaten by these frenzied youths, who were enraged by the boy's empty pockets. Battered and bruised, John made his way home where he found his friends reporting the incident to his grandmother, who, despite John's pleas to heed the threats of the gang and keep quiet, called the Providence Police Department (department). An officer arrived at the Grieco home, interviewed John, and completed a standard report of the assault that was characterized as a "robbery-strong-arm" incident in the police report. Without the knowledge or consent of the Grieco family, this police report would soon become public information, causing further trauma for John. By notable travel of this report into a media-accessible box at the Providence police headquarters that included all recent incidents on file, Rhode Island's primary newspaper, The Providence Journal (Journal), gained access to John's identity, home address and the details of this crime. On February 18, 2002, John's true name and address, and the specifics of the assault, appeared in the "Providence Police News" section of the Journal.[1]

At John's request, Grieco did not seek immediate medical treatment for his injuries, but kept a guarded watch over him until, four days after the attack, he had adequately recovered, both mentally and physically, to return to school. On the day John returned to school, his teacher expressed sympathy about the incident and John learned that on that very morning, his harrowing story had been circulated to the public in the Journal. As a result, John was not only forced to relive the attack, but also was subjected to a wholly new fear that the gang would return to his home and seek revenge. John's fear was well-founded. The day after the article appeared, several young Asian males began loitering outside John's home, and then threw rocks in the direction of the Grieco dwelling. Grieco called the police once again that week to report these latest disturbances. Unable to overcome his guilt about these threats and fearful for the safety of his mother and siblings, John and his family fled their home and remained at their grandmother's home in

---

1. The relevant "Providence Police News" section read as follows:

    "[John Doe], 14, of 53 Ayrault Street told police that as he was walking with friends on Felix Street about 6 p.m. Monday a gang of youths, most of whom were wearing blue bandanas, menacingly approached him and his friends. [Doe] tried to run but slipped, he said, and the gang made him empty his pockets, then punched and kicked him when they found he had no money."

Cranston for the next seven to eight months. The family never permanently returned to their Providence residence. Further, John has never fully recovered from his fear and anxiety. A psychiatric evaluation, done approximately six years after the incident, revealed a diagnosis of post traumatic stress disorder.

Grieco sued the city pursuant to G.L. 1956 § 9-1-44,[2] that provides for civil liability for the release of the name of any minor-victim by a member of any municipal or state agency. Grieco alleged that, but for the negligent release of the police report by the department, the Journal would not have obtained his name and address, and the subsequent publication of these unfortunate events would never have occurred. Consequently, Grieco attributed John's post traumatic illness to the newspaper article that was the direct result of the city's negligence. She sought compensatory damages and costs from the city. Pursuant to Rule 56 of the Superior Court Rules of Civil Procedure, she filed a motion seeking summary judgment on the issue of liability, and a civil motion calendar justice entered judgment against the city on March 3, 1999. Significantly, the city failed to object to summary judgment and offered no opposing evidence. Thereafter, a bench trial was held in May 2000, on the sole issue of damages. After one day of testimony presented by plaintiff, including an expert medical opinion and no witnesses proffered by the city, the trial justice denied the city's motion for a judgment as a matter of law and entered judg-

ment in favor of Grieco for the sum of $30,000. The city filed a timely appeal.

■ Although it failed to oppose the grant of summary judgment by the hearing justice, the city now attempts to contest the finding of liability and suggests that § 9-1-44 has been misinterpreted and that a proper interpretation of the statute would yield very different results for state and municipal agencies, such as the department. The city asserts that the legislative intent of the statute, as evidenced by its legislative history, was to place liability on *individuals* who violate § 9-1-44, but not to impute such liability to their employers. Additionally, the city suggests that in the interest of fostering the purpose and benefits of open government, this statute should be narrowly interpreted. The city interprets § 9-1-44 as creating a cause of action intended to deter the purposeful disclosure of a minor-victim's identity but not a disclosure occasioned by mere negligence. We respectfully conclude that the city may not attempt to litigate before this Court issues that it failed to raise in the Superior Court. Thus, the question of the city's liability is deemed waived by its failure to object to the entry of summary judgment.

■ The city's primary challenge rests on the amount of damages awarded by the trial justice sitting without a jury. The defendant contends that for a party to recover for emotional distress, clear proof of physical symptoms must be established, and that Grieco failed to demonstrate adequate physical symptomatology by intro-

---

**2.** General Laws 1956 § 9-1-44 provides as follows:

"**Civil action for release of names of minors.**— (a) No member of any municipal or state agency shall release the identity of any minor who is believed to be a victim of a violation of any law except with the consent of his or her parent or guardian. This section shall not prevent the release of the identity of minors involved in a violation of a motor vehicle law or involved in a motor vehicle accident.

(b) Any person found to be in violation of the provisions of this section shall be liable to the minor in a civil action brought on behalf of the minor for compensatory damages and court costs."

ducing a psychiatric evaluation of a single examining physician. Additionally, the city argues that damages under § 9–1–44 are intended to compensate for the stigmatization of having one's identity published, not for the trauma arising from the violent attack that occurred prior to publication. Therefore, the city argues that $30,000 is an improper award since it purportedly compensates John for a lasting trauma that originated from the gang beating and was not causally related to the disclosure of his identity to the Journal. The city contends that the trial justice should have bifurcated damages intended to compensate a victim for harm caused by the assault from emotional distress damages caused by the publication of his name and address, thereby reducing the amount of damages attributable to the city's negligence. For the abovementioned reasons, the city asks us to vacate the judgment.

Grieco asserts that § 9–1–44 is remedial in nature and should be liberally construed in light of its salutary purpose. She applauds the trial court's award of damages as commensurate with John's injuries and based upon specific findings of fact by the trial justice that John suffered ongoing post traumatic stress disorder because of emotional trauma caused by the department's negligence. Grieco argues that the trial justice properly considered the material evidence and that his rationale was well-reasoned and supported by the evidence.

■ We deny the city's appeal and affirm the judgment in favor of Grieco. "[F]indings by a trial justice sitting without a jury in a civil case are accorded great weight and will not be disturbed on review 'unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties.'" *Kingstown Mobile*

*Home Park v. Strashnick*, 774 A.2d 847, 858 (R.I.2001) (quoting *Harris v. Town of Lincoln*, 668 A.2d 321, 326 (R.I.1995)). The trial justice causally linked John's injuries with the publication resulting from the city's negligent release of his name and address. Based upon the competent evidence before him, the trial justice specifically found,

> "by a fair preponderance of the evidence that [John] suffers from [p]ost [t]raumatic [s]tress [d]isorder that is directly attributable to the publication of his name * * * and that his symptoms and behavior are consistent with the diagnosis * * *.

> "From this Court's view of the witnesses, all of whom are found to be credible, it is convinced that because of the publication, [John] was seriously harmed both mentally and physically. His condition, which continues today, has essentially changed his personality and lifestyle."

We cannot say that the trial justice overlooked or misconceived any material evidence, nor are we persuaded that his decision was wrong. His findings were deliberate and thorough and his award was neither excessive nor shocking, but was commensurate with the harm done to John.

Additionally, the trial justice properly addressed defendant's contention that Grieco failed to adequately demonstrate physical symptomatology necessary to substantiate claims of emotional stress. In his bench decision, the trial justice performed the correct inquiry, relying on the requirements set forth in *Reilly v. United States*, 547 A.2d 894, 895 (R.I.1988) (citing *D'Ambra v. United States*, 114 R.I. 643, 656, 338 A.2d 524, 530–31 (1975)), that "there must be a physical manifestation of an emotional injury in order to recover

damages for the negligent infliction of emotional distress."[3] He found that,

> "both [John] and his mother testified that after the publication, he had difficulty sleeping and eating; suffered nightmares; became withdrawn socially and mistrustful of people. This was confirmed by Dr. Paolino, who found these to be symptoms of [John's] [p]ost [t]raumatic [s]tress [d]isorder. Physical manifestations or symptomatology does not mean physical injury. Here, the ills that [John] suffered were exactly the same as other courts have found to equal physical manifestation, and it is this Court's conclusion that they meet the standards set forth in *Reilly*."

The trial justice also referred to several cases in other jurisdictions that have found evidence of sleep and eating disorders, inability to function, and antisocial behavior, as sufficient evidence of physical manifestations of an emotional injury. *See Czaplicki v. Gooding Joint School District*, 116 Idaho 326, 775 P.2d 640, 646 (1989) (finding that the physical symptoms of severe headaches, occasional suicidal thoughts, sleep disorders, reduced libido, fatigue, stomach pains, and loss of appetite are manifestations of emotional injuries); *Vance v. Vance*, 286 Md. 490, 408 A.2d 728, 734 (1979) (holding that an inability to sleep, socialize, or function normally were objective manifestations of a mental disorder); *First National Bank v. Langley*, 314 So.2d 324, 328 (Miss.1975) (finding that severe nightmares may be considered evidence of physical injury). Consequently, the trial justice found by a preponderance of the evidence that Grieco met the thresh-

old level of proof to satisfy a fact-finder that emotional harm causally was connected to defendant's behavior. We agree with the trial justice that John's physical manifestations were sufficient to support the emotional injury present in this case.

■ We discern no error in the award by the trial justice of $30,000 as compensation for John's injuries. The trial justice was under no obligation to bifurcate the amount of damages attributable to the assault, from the harm suffered as a result of the release of his name to the newspaper. The only cause at issue in this case was a claim for damages arising from a violation of § 9–1–44, the claim considered by the trial justice. In determining whether the damage award was commensurate with John's injuries, we defer to our well-established rule that, "no mathematical formula exists for awarding a plaintiff damages for his or her pain and suffering, which is in the nature of compensatory damages." *Trainor v. Town of North Kingstown*, 625 A.2d 1349, 1350 (R.I.1993) (per curiam). The calculation of a specific amount of monetary damages by a factfinder is not an easy undertaking. Although it may be difficult to establish a dollar figure for something as intangible as emotional harm, this is exactly the task that factfinders are called upon to perform every day. "As long as the complaining party can 'prove damages with reasonable certainty[,]' such damages will not be denied merely because they 'are difficult to ascertain.'" *Marketing Design Source, Inc. v. Pranda North America, Inc.*, 799 A.2d 267, 273 (R.I.2002) (quoting *Sea Fare's American Cafe, Inc. v. Brick Market Place*

---

**3.** The Court in *Reilly v. United States*, 547 A.2d 894 (R.I.1988) adhered to the rule requiring physical symptomatology to recover damages for negligent infliction of emotional distress for two reasons: The first was for ease of application and to guarantee that only genuine claimants recover. The second is based on the public policy view that where a defendant has been merely negligent, his fault has not been so great as to require that he "make good a purely mental disturbance." *Id.* at 897 (quoting Restatement (Second) *Torts*, § 436A, comment b (1965)).

*Associates,* 787 A.2d 472, 478 (R.I.2001)). As stated in *Gibbons v. Rhode Island Co.,* 37 R.I. 89, 95, 91 A. 9, 12 (1914), "[w]hat sum will justly amount to compensation it is very difficult to determine." The trial justice found that $30,000 amounted to just compensation and we see no reason to disturb this holding.

For the reasons stated herein, the defendant's appeal is denied and dismissed, and the judgments in favor of Grieco are affirmed. The papers in this case are remanded to the Superior Court.

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.