Jamie E. PERROTTI et al.

v.

Paul S. GONICBERG.

No. 2004–138–Appeal.

Supreme Court of Rhode Island.

July 7, 2005.

Daniel P. McKiernan, Esq., Providence, for Plaintiff.

Richard H. Burrows, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The plaintiffs, Jamie E. Perrotti and Paul A. Perrotti, filed a negligence action seeking recovery for physical and psychological injuries allegedly suffered in an automobile accident. At the time of the accident, Mrs. Perrotti was approximately six months pregnant. After trial, a jury found in favor of the plaintiffs and awarded them $750 in damages.[1] Before submitting the case to the jury, however, the trial justice had ruled, *sua sponte*, that Mrs. Perrotti had failed to establish a *prima facie* case with respect to her claim of emotional injury and anguish because of her concern about the health of her unborn child. The trial justice, therefore, granted judgment as a matter of law in favor of the defendant on said claim, pursuant to Rule 50 of the Superior Court Rules of Civil Procedure. After the jury verdict was entered, the plaintiffs filed a motion for a new trial, which was denied by the trial justice in a written decision, and from which they now appeal.

The case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised on appeal should not summarily be decided. After hearing the arguments of the litigants and examining the record and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we affirm the judgment entered in the Superior Court.

## I

### Facts and Procedural History

On December 25, 1998, plaintiffs were involved in an automobile accident with defendant Paul Gonicberg. Paul Perrotti was driving plaintiffs' car; Jamie Perrotti was in the passenger seat, and their daughter Ashley[2] was seated in a car seat in the back of the car. As plaintiffs' car approached an intersection in the farthest right of three lanes on Route 44 in Smithfield, defendant, who was traveling in the same direction, abruptly turned into the same lane, causing a collision. At the outset of the trial, the parties filed a stipulation in which defendant admitted fault, thereby resolving the issue of liability. The trial proceeded, therefore, on the issue of damages only.

Jamie Perrotti testified that when the accident occurred, both front airbags deployed. She said that she went forward, with her chin right above the airbag and hit her head on the windshield. In addition, she hit her knee against the dashboard. After the accident, she was taken by rescue vehicle to Our Lady of Fatima Hospital, where she said the staff tried to console her, gave her "the best that [her] child was okay" and examined her head, knee, and abdomen. She initially testified that she could not be X-rayed because of her pregnancy and that only the fetal heartbeat was checked in the emergency room. She further said that the hospital staff did not feel it was necessary to do an ultrasound test. On cross-examination, after being confronted with her deposition testimony, she acknowledged, however, that the emergency personnel conducted an ultrasound test and told her that everything was fine with the baby. On the recommendation of the hospital staff, she had a follow-up appointment with her obstetrician.

---

1. Shortly before the start of trial, the plaintiffs received an arbitration award of $2,500, consisting of $649 for medical expenses and $1,851 for pain and suffering, plus interest and costs. The plaintiffs, however, rejected this award and chose, instead, to proceed to trial.

2. The daughter's name is spelled variously as Ashlee or Ashley throughout the record.

Concerning her scraped chin and bruised knee, Mrs. Perrotti acknowledged that she never received any treatment for her chin and that for the pain in her knee she was advised to take regular Tylenol. After a follow-up visit for her knee on April 8, 1999, the doctor indicated that the knee "is now normal."

Mrs. Perrotti also testified that she was very nervous, shaken up, and scared while she was in the hospital, and was concerned about her baby. Her fear lessened a little bit upon the doctors' reassurances, but it remained with her "like a black cloud" until her healthy baby boy was delivered eighty-eight days later. She acknowledged that she did not seek counseling or any other psychiatric service for her anxiety. The "black cloud" vanished once the baby was born and was fine, she said. On cross-examination, she admitted that neither her physical injuries nor the "black cloud" kept her out of work as a travel agent.[3] She also stated that the rest of her pregnancy was normal. With regard to anxiety or stress, Mrs. Perrotti said she did not complain to her doctor, nor did she receive any treatment or medication. Except for one follow-up visit after the car accident, Mrs. Perrotti did not have any additional visits with her obstetrician.

Paul Perrotti testified that he would often talk to his wife about "you know, potential injuries that could have arisen from the accident, but the overall well-being of the child, and, you know, just basically comforting her and just supporting her in hopes of a healthy child."

## A. Defendant's Motion *in Limine*

Before the jury was impaneled, the trial justice heard arguments with respect to defendant's motion *in limine* in which he sought to preclude plaintiffs from testifying about any injuries to their minor child Ashley, and about wages lost because of the accident.[4] The defendant asserted that because Ashley's claim for damages was separate and not yet in litigation, any claim by plaintiffs for mental anguish or lost wages in relation to their daughter would be derivative to Ashley's claim and not compensable in this lawsuit.[5] The defendant also asked that Jamie Perrotti be precluded from testifying about any psychological injuries, since there was no medical evidence to support such a claim.

The plaintiffs stipulated that any claim for lost wages was derivative from Ashley's claim, but argued that Ashley's injury was relevant to Mrs. Perrotti's state of mind on the date of the accident and "one of the factors that caused psychic damages to flow" from her injury. In addition, they opposed defendant's attempt to exclude evidence of her anxiety and concern about the welfare of her unborn child. They contended that Jamie Perrotti was entitled to damages for "whatever mental anguish or suffering" she experienced, given that she had suffered physical injuries in the accident. The defendant countered that there was no adequate medical or psychological evidence to support such a claim. When the hearing ended, the trial justice ruled that "the child in the back seat is not an issue," but deferred a decision on the mental-suffering claim to see "what plaintiff presents."

3. She did take time out of work to care for her daughter Ashley.

4. The lost wages at issue allegedly were incurred by Mrs. Perrotti as a result of her staying home to care for Ashley as she recovered from her injuries.

5. On October 10, 2003, plaintiffs filed an action against Paul Gonicberg on behalf of their daughter Ashley, which is pending in Superior Court (PC 03–5430).

## B. Judgment as a Matter of Law

The trial justice did, indeed, revisit the issue at the close of the evidence. She advised counsel, outside the presence of the jury, that the court would exercise its authority under Rule 50(a)(3) of the Superior Court Rules of Civil Procedure, and involuntarily dismiss Mrs. Perrotti's claim for "psychic damages, mental anguish and/or emotional injury." She found that plaintiff had failed to "establish a prima facie case with respect to emotional damage," and that she had "failed to introduce the appropriate physical symptomatology evidence to buttress her emotional distress claim." In fact, the trial justice noted, plaintiffs "did not introduce any evidence of relevant physical symptoms that would warrant emotional damage other than the 'black cloud' that hovered over her * * *." Accordingly, the trial justice found that there were "no factual issues upon which reasonable minds might draw different conclusions," and that "[p]laintiff's apprehension regarding the health of her then unborn fetus was not reasonable in light of the evidence presented." The trial justice, therefore, granted judgment as a matter of law to defendant on Mrs. Perrotti's claim for psychic damage.

## II

## Discussion

On appeal, plaintiffs challenge two rulings of the trial justice, which they claim warrant a new trial. First, they assert that it was error for the trial justice to remove from the jury's consideration Mrs. Perrotti's claim for mental suffering caused by her worry and anxiety about her unborn child. Secondly, they aver that the trial justice committed reversible error by precluding them from presenting evidence that their two-year-old child suffered a broken leg.

Their first assertion of error is framed: "**I. It was Error to Instruct the Jury to Disregard Ms. Perrotti's Testimony Regarding Her Concern for Her Unborn Baby.**" We initially observe that we have searched the record on appeal to find such a specific instruction, but have been unable to locate one.[6] What the trial justice did do, however, was grant judgment to defendant as a matter of law on Mrs. Perrotti's claim for psychic damage. We will, therefore, treat plaintiffs' argument as an assignment of error relative to the trial justice's dismissal of said claim under Rule 50(a)(3).

## A. Damages for Mental Suffering

The plaintiffs contend that the trial justice erred in dismissing Mrs. Perrotti's claim for mental suffering occasioned by her concern for her unborn child. Relying on *Arlan v. Cervini*, 478 A.2d 976 (R.I. 1984), plaintiffs assert that proof of physical symptomatology is not required when a plaintiff seeks compensation for mental anguish caused by a physical injury to the body. Moreover, plaintiffs assert that this Court, in *Gagnon v. Rhode Island Co.*, 40 R.I. 473, 101 A. 104 (1917), previously has allowed recovery for damages resulting

---

6. The trial justice did advise the jury as follows:

"[THE COURT]: At the outset of this case, you were advised that this was about, among other things, the alleged psychic injury to plaintiff as a result of her concern over the state of her unborn baby."

"I have made a determination that that portion of the case cannot stand and that that portion of the case has been dismissed."

"So when you are ultimately doing your job, what you will be considering is your determination of the value of plaintiff's case relative to her chin and her knee as will be addressed by counsel but only that."

from a pregnant woman's apprehension that she would give birth to a deformed child after she had been struck by a trolley car.

The defendant responds that "the trial justice considered the facts in evidence, specifically that Mrs. Perrotti's personal injuries were minor and that plaintiff knew on the date of the accident that the fetal heart rate was normal." In addition, he notes that Mrs. Perrotti "was assured by the emergency staff and her obstetrician that the fetus was fine," and that, therefore, "the trial justice correctly found that the claim for emotional injury was not supported by the evidence."

In granting judgment as a matter of law, the trial justice relied on Rule 50(a)(3), which provides:

"When a motion for judgment as a matter of law is made at the close of the evidence offered by an opponent, the court in lieu of granting the motion may order the claim involuntarily dismissed on such terms and conditions as are just, and the dismissal shall be without prejudice. In the absence of a motion, the court may take such action on its own initiative."

■ "The standard of review on a motion for [judgment as a matter of law] is well settled. Without weighing the evidence or evaluating the credibility of witnesses, the trial justice must consider the evidence in the light most favorable to the nonmoving party [or party against whom judgment is to be entered] and draw all reasonable inferences in favor of [said] party. * * * 'If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination.' * * * This Court applies the same standards as the trial court when reviewing the decision of a trial justice on a motion for [judgment as a matter of law]." *Francis v. American Bankers Life Assurance Company of Florida*, 861 A.2d 1040, 1045 (R.I.2004) (quoting *Gallucci v. Humbyrd*, 709 A.2d 1059, 1062 (R.I.1998)).

■ The only issue for the jury to decide in this case was the appropriate amount of damages, liability having been admitted by defendant before trial.

"The question of the amount of damages is important, as well as that of liability, and the trial court is * * * duty bound to give it serious consideration, keeping in mind that the burden is upon the plaintiff to prove the damages by a preponderance of the evidence. A plaintiff should be compensated for all his damages of which the defendants' negligence was the proximate cause, but no claim for damages should be allowed to stand where such claim is not supported by the required degree of proof, or is speculative, or imaginary, or is clearly attributable to other causes." *Andrews v. Penna Charcoal Co.*, 55 R.I. 215, 222, 179 A. 696, 700 (1935).

■ One of the avenues for a plaintiff to recover damages for mental suffering in a case involving a negligent defendant, and the one on which the trial justice based her decision, is to establish a case of negligent infliction of emotional distress. Only two groups of plaintiffs are able, however, to seek recovery under a theory of negligent infliction of emotional distress: "those within the 'zone-of-danger' who are physically endangered by the acts of a negligent defendant, and bystanders related to a victim whom they witness being injured." *Jalowy v. Friendly Home, Inc.*, 818 A.2d 698, 710 (R.I.2003) (citing *Marchetti v. Parsons*, 638 A.2d 1047, 1049, 1051 (R.I. 1994)).

■ In addition, plaintiffs must "as a result of experiencing the accident, suffer serious emotional injury that is accompanied by physical symptomatology." *Marchetti*, 638 A.2d at 1052. In *DiBattista v. State*, 808 A.2d 1081 (R.I.2002), a case involving claims for negligent and intentional infliction of emotional distress, the Court said that "[t]o defeat a motion for summary judgment, the [plaintiffs] could not rely upon 'unsupported conclusory assertions of physical ills contained in the plaintiffs' complaint.'" *Id.* at 1089 (quoting *Clift v. Narragansett Television L.P.*, 688 A.2d 805, 813 (R.I.1996)). "Other than generalized assertions in plaintiffs' amended complaint, [they] did not produce evidence of the requisite physical manifestations of their alleged emotional distress. Thus, as a matter of law, the emotional distress claims were not entitled to survive the summary-judgment motion." *Id.*

In *Reilly v. United States*, 547 A.2d 894 (R.I.1988), the Court gave a detailed reasoning for the requirements of physical symptomatology. The Court said that "in requiring physical symptomatology as an element of a claim for the negligent infliction of emotional distress, we focus our attention and our concern on the subjectivity inherent in a claim for purely emotional distress." *Id.* at 897.

"A plaintiff may be genuinely, though wrongly, convinced that a defendant's negligence has caused her to suffer emotional distress. If such a plaintiff's testimony is believed, and there is no requirement of objective corroboration of the emotional distress alleged, a defendant would be held liable unjustifiably. It is in recognition of the tricks that the human mind can play upon itself, as much as of the deception that people are capable of perpetrating upon one another, that we continue to rely upon traditional indicia of harm to provide objective evidence that a plaintiff actually has suffered emotional distress." *Id.* (quoting *Payton v. Abbott Labs*, 386 Mass. 540, 437 N.E.2d 171, 175 (1982)).

■ In addition, this Court has held that the mere possibility of some future harm occurring as the result of defendant's negligence is not enough by itself to support a negligence claim. In *Kelley v. Cowesett Hills Associates*, 768 A.2d 425 (R.I. 2001), the plaintiff's awareness that she could have been exposed to asbestos in the floor tiles of her apartment together with the possibility of contracting cancer as a result was a risk "too tenuous to be a viable cause of action." *Id.* at 430. We agree with the trial justice's reasoning that in light of the normal fetal heart rate and ultrasound, together with a normal follow-up by the obstetrician, plaintiff's anxiety was not "sufficiently distinguishable from the average pregnant woman's concern regarding the health of her unborn fetus" to warrant recovery.

The Court, in *Reilly*, reiterated that plaintiffs asserting the negligent infliction of emotional distress are not required to show "actual physical impact at the time of the accident." *Reilly*, 547 A.2d at 896. To establish a *prima facie* case, it is, therefore, sufficient that the plaintiff was within the "zone of danger" of defendant's negligent activity or is a bystander related to a victim whom he or she witnesses being injured. If the plaintiff then suffers emotional distress, this distress, however, must be accompanied by physical symptoms. *Id.*

In deciding what constitutes physical symptoms and what does not, the courts are required to walk a very fine line. In *Grieco v. Napolitano*, 813 A.2d 994, 998 (R.I.2003), this Court affirmed a trial justice's findings that the plaintiff showed physical manifestations of emotional injury. To support his decision, the trial jus-

tice cited case law from other jurisdictions establishing that symptoms such as severe nightmares (*see First National Bank v. Langley*, 314 So.2d 324, 328 (Miss.1975)), severe headaches, occasional suicidal thoughts, sleep disorders, reduced libido, fatigue, stomach pains, loss of appetite (*see Czaplicki v. Gooding Joint School District*, 116 Idaho 326, 775 P.2d 640, 646 (1989)), or the inability to sleep, socialize, or function normally (*see Vance v. Vance*, 286 Md. 490, 408 A.2d 728, 734 (1979)) are sufficient physical manifestations of emotional injuries. *Grieco*, 813 A.2d at 998. Some of these symptoms appear somewhat less tangible and point toward a more relaxed standard for physical symptomatology, such as we have recognized in cases involving the intentional infliction of emotional distress. *See Adams v. Uno Restaurants, Inc.*, 794 A.2d 489, 492–93 (R.I.2002) (plaintiff found to have established physical symptomatology based on his own testimony about emotional distress and humiliation despite the absence of a medical expert). In *Grieco*, however, the plaintiff's symptoms—difficulty sleeping and eating, nightmares, social withdrawal—were confirmed by a physician who diagnosed the plaintiff with posttraumatic stress disorder and confirmed that the plaintiff's symptoms were consistent with that disorder. *Grieco*, 813 A.2d at 996–98. Conversely, Mrs. Perrotti's claims of mental anguish were unsupported, save for her own description of the "black cloud."

■ Moreover, in *Grieco*, there was a direct causation between the tortious conduct of the defendant and the plaintiff's diagnosis and symptoms of posttraumatic stress disorder. *See Grieco*, 813 A.2d at 997. In the present case, the injuries Mrs. Perrotti suffered during the accident, namely a bruise to her chin, a scraped head, and an injured knee, have no impact in a claim for negligent infliction of emotional distress. In addition, we hold that Mrs. Perrotti's testimony that as the result of the accident she had "a black cloud" over her head "that constantly followed [her]," is insufficient on its own to constitute the physical symptomatology that is required to establish a *prima facie* case of negligent infliction of emotional distress that would allow plaintiffs to collect damages. Under this avenue of recovery the trial justice was, therefore, correct to grant judgment as a matter of law in favor of defendant and to deny plaintiffs' motion for a new trial on this issue.

On appeal, plaintiffs also advance their claim for emotional suffering under a different theory of law, namely, that a pregnant woman is entitled to damages for mental suffering despite the absence of physical symptoms resulting from the mental anguish.[7] The plaintiffs rely on two Rhode Island cases they say support their argument. *See Arlan v. Cervini*, 478 A.2d 976 (R.I.1984); *Gagnon v. Rhode Island Co.*, 40 R.I. 473, 101 A. 104 (1917).

In *Arlan*, the plaintiff, a sixteen-year-old girl had suffered extensive facial injuries in a car accident and was left with serious and permanent facial scarring. As a result, she "became depressed, quit school, gained a significant amount of weight, and in general suffered a 'cataclysmic loss of self-esteem.'" *Arlan*, 478 A.2d at 978. This Court held that "mental suffering, which may include nervousness, grief, anxiety, worry, shock, humiliation, embarrassment, or indignity, arising from consciousness of a facial or bodily scar, is a compensable element of damages." *Id.* at 980.

---

7. The plaintiffs also advanced this argument in their motion for a new trial before the trial justice. During the trial, however, their attorney had not explicitly stated under which theory of law he was pursuing plaintiffs' claim for damages for mental anguish.

We perceive, however, that *Arlan* is readily distinguishable from the case now before us. Mrs. Perrotti suffered several minor injuries during the car accident on December 25, 1998. She injured her right knee, for which she received treatment initially and, again, over the course of the next several months. A medical note dated April 8, 1999, said, however, that "[t]he right knee is now normal." In addition, Mrs. Perrotti described that she hit her head on the windshield as a result of the accident. Her head was examined at the hospital, but she did not require further treatment. The injury she suffered that is perhaps most closely related to the facts in *Arlan* is a bruise under her chin that resulted in a scar plaintiff herself described during the trial as "[n]ot super noticeable, you have to be looking under my chin to see it." The plaintiffs in the current case, however, do not allege that Mrs. Perrotti suffered mental anguish as a result of this scar or any of the other physical injuries she suffered as a result of the accident. Rather, the "black cloud" she described resulted from her worries about her unborn child, and disappeared only after the baby was born healthy eighty-eight days later. She described these worries despite the fact that fetal heart monitoring and an ultrasound examination in the emergency room showed normal results, and the rest of her pregnancy passed without any abnormalities or complications.[8]

Our holding in *Arlan* permitted the plaintiff to recover damages for mental suffering that was the direct result of the facial injuries and scars she sustained as a result of an accident. Mrs. Perrotti does not assert that she suffered mentally or emotionally as a direct result of the injuries she incurred in the car accident. Rather, she alleges mental suffering because of her worries about a part of her body she did not injure in the accident, and for her worries about her fetus which, she was assured immediately after the accident and later on, was doing fine. Therefore, we hold that *Arlan* does not apply to the case now before us because there is no direct relationship between the physical injuries suffered as a result of the accident and the mental suffering claimed.

In addition, plaintiffs rely on *Gagnon* for the proposition that a pregnant woman should be permitted to collect damages for her apprehension and anxiety after a personal injury. In *Gagnon*, a pregnant woman, walking on the sidewalk near the corner of John and Pleasant Streets in Woonsocket, was struck and severely injured by a street car which, when turning the corner overlapped the sidewalk for up to fifteen inches. *Gagnon*, 40 R.I. at 474, 101 A. at 105. When the plaintiff in *Gagnon* was struck she felt pain in her back and side and said that she "felt the child pushing toward the right." *Id.* at 475, 101 A. at 105. She further testified at trial that from the time of the accident until the birth she was worried that the child would be born deformed—a worry that later proved to be founded. *Id.* This Court held that the

> "foetus is a part of the person of a pregnant woman, and if, by reason of the nature and circumstances of an injury to her person caused by the negligence of a defendant, she suffers appre-

---

**8.** Although plaintiffs' attorney repeatedly said that Mrs. Perrotti suffered contusions to her abdomen, plaintiff testified only that "her body hit forward with the airbag," but did not mention the fact that her abdomen was hit in any way. Instead, the only parts of her body she explicitly mentioned were her chin, her knee, and her head. The plaintiff mentioned, however, that her abdomen was checked in the emergency room at Our Lady of Fatima Hospital.

hension and anxiety as to the effect of the injury upon the foetus, * * * such mental suffering becomes an element of her damages as a natural and proximate result of the negligence which caused the injury." *Id.* at 476, 101 A. at 105.

Furthermore, the Court held that "the mother is entitled to damages for her distress and disappointment at the time of the birth because through the defendant's negligence she has been deprived of the right and the satisfaction of bearing a sound child, if it be found that the child's deformity is due to the injury she received through the defendant's negligence." *Id.*

The plaintiffs propose that *Gagnon* stands for a general rule that a pregnant woman can collect damages for her apprehension that she would give birth to a deformed child. They also cite various cases from other jurisdictions to support their argument that Mrs. Perrotti should be able to recover damages for her alleged mental suffering. *See, e.g., Prescott v. Robinson,* 74 N.H. 460, 69 A. 522 (1908) (holding that the mother was permitted to recover damages for mental anguish because of the reasonable probability that the defendant's negligent act of severely injuring her would cause her to "produce an abnormal child"); *Fehely v. Senders,* 170 Or. 457, 135 P.2d 283 (1943) (holding that a woman, who was six months pregnant at the time of the accident, was permitted to recover damages for her apprehension that her child may be born dead or deformed as a result of striking her abdomen against the steering wheel in the accident); *Rosen v. Yellow Cab Co.,* 162 Pa.Super. 58, 56 A.2d 398 (1948) (permitting a woman in her seventh or eighth month of pregnancy who, after suffering back and shoulder injuries in a car accident, experienced abdominal pains, bleeding, and the onset of labor pains, to collect damages for her apprehension that the accident may have caused a premature birth and injury to the baby).

It appears to us that there are important distinctions between the cases plaintiffs cite and the case now before us. First, most of the cases plaintiffs cite predate the era of reliable antenatal diagnostics. Secondly, in all the cases plaintiffs cite, as well as others establishing and supporting the same avenue of recovery, the pregnant woman either suffered a direct injury to her abdomen, or suffered symptoms related to her pregnancy, such as contractions, bleeding or premature labor, that provided a direct physical indication that the fetus or the pregnancy might be compromised in some way.

In the current case, however, Mrs. Perrotti did not suffer any injury to her abdomen, nor did she suffer any physical problems or pain with regard to her pregnancy as a result of the collision. In addition, while in the emergency room at Our Lady of Fatima Hospital, she was informed that the fetal heart rate was normal, and an ultrasound examination also yielded a normal result. Also, the rest of her pregnancy was normal. At no time did she ever suffer any physical problems in relation to her pregnancy, nor was she informed by a medical professional that something could be wrong with the baby. The only indication of her anxiety was her testimony that a "black cloud" followed her for the rest of her pregnancy. She did not, however, seek any counseling, medication or treatment for this condition.

Therefore, a clear distinction can be recognized between the cases plaintiffs cite and the case now before us. In no other case was the plaintiff explicitly informed by medical professionals, after an evaluation of the pregnancy with the help of a fetal heart-rate monitor and ultrasound, that everything was fine and that the baby was doing well. Moreover, in *Porter v.*

*Headings,* 270 Or. 281, 527 P.2d 403, 404 (1974), one of the cases plaintiffs rely on, a pregnant woman, after being injured in a car accident, was told by a nurse in the emergency room who listened to the fetal heart beat that she "couldn't hear it." But, the woman's doctor, arriving about thirty minutes later, checked the fetal heart beat and told the plaintiff that the baby was "O.K." *Id.* In holding that the jury properly could find mental anguish in this case, the court noted that the nurse's statement could result in "extreme mental anguish during the period until plaintiff's doctor assured her that the baby was 'O.K.'" *Id.* at 404–05. The court did not say, however, that the woman could collect damages for the period from the time of the accident until she delivered a healthy child, despite the fact that a doctor had assured her that everything was all right.

We seek not to close off the avenue of recovery that was opened in *Gagnon* for pregnant women who suffer mental anguish as a result of a defendant's wrongful conduct. We recognize, however, that *Gagnon* predated the era of reliable antenatal diagnostics, such as fetal heart-rate monitoring and ultrasound. Therefore, the plaintiffs and their physicians in the above-cited cases had no means of detecting any stress or injury to the fetus until after the birth. As a matter of public policy, we are of the opinion that these advancements in medical technology, which now are routinely used in monitoring a pregnancy throughout its course, should not be ignored, and that our holding in *Gagnon* should be repositioned in a twenty-first century context.

■ We hold, therefore, that a plaintiff may not recover for mental anguish for a potential injury to her unborn child that is wholly unsupported by any physical suffering during and after the incident in question and that explicitly has been ruled out by routine medical diagnostics. We are mindful of the fact, however, that pregnancy and childbirth continue to pose great mysteries that escape complete comprehension and control, and that carry risks with them, which, despite the latest advancements in medical research and technology, cannot be fully assessed. This has led some of our sister states to sustain their holdings in cases involving mental anguish suffered by pregnant women in recent decisions. *See, e.g., Simons v. Beard,* 188 Or.App. 370, 72 P.3d 96 (2003) (holding that a pregnant woman whose baby died just before being born as a direct result of defendant-doctor's negligence was permitted to recover damages for her apprehension about the child's well-being before death, after she learned that the baby was in a transverse position across the upper part of the birth canal, and defendant did not undertake any steps to correct the position until after the baby had died). We emphasize that in an appropriate case this Court may reach a similar result. Today, however, we affirm the trial justice's decision in the current case and hold that she did not err when she granted judgment as a matter of law in favor of defendant.

### Evidence of Ashley's Injury

■ The plaintiffs' second assignment of error is that the trial justice improperly excluded evidence of Ashley's broken leg. They contend that this evidence was "directly relevant to the level of apprehension experienced by Ms. Perrotti" because the injury to her two-year-old daughter was one reason why her concern about her unborn child was so deep-seated. Further, they assert, such evidence was directly relevant to her state of mind, and was necessary to refute defendant's attacks on her credibility. The defendant counters that the evidence of Ashley's broken leg is

directly related only to plaintiffs' claim of loss of consortium as it relates to Ashley's injury. He points out that plaintiffs chose to sever their own claims from those of Ashley's and, accordingly, their loss-of-consortium claim must await another day.

■ "The admission or exclusion of evidence on grounds of relevancy is within the sound discretion of the trial justice and, absent a showing of abuse of this discretion, this Court will not disturb a ruling concerning the admissibility of evidence." *State v. Lynch,* 854 A.2d 1022, 1035 (R.I.2004) (quoting *State v. Calenda,* 787 A.2d 1195, 1199 (R.I.2002)). Here, we see no abuse of discretion in the trial justice's decision to exclude evidence of Ashley's injury. The plaintiffs sought to include evidence of the two-year-old child's broken leg to support the mother's claim of "psychic suffering," contending that knowledge of her daughter's broken leg increased her worries about her unborn child. The trial justice emphasized, however, that the plaintiffs had chosen to pursue their daughter's claim and any derivative claims of Mrs. Perrotti independently. She excluded the evidence of Ashley's injury as irrelevant to the plaintiffs' damage claim for "Mrs. Perrotti's physical injuries and any mental suffering resulting therefrom." We perceive no abuse of discretion in her ruling.

### Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court, to which we remand the record of the case.